*Estate of H. Gregory Brown v. Carrie M. Ward, et al.*, No. 1009, Sept. Term 2023.
Opinion by Arthur, J.

**CREDIT GRANTOR REVOLVING CREDIT PROVISIONS—LICENSING REQUIRMENTS**

The Credit Grantor Revolving Credit Provisions subtitle, codified at Subtitle 9 of Title 12 of the Commercial Law Article of the Maryland Code ("CL"), governs a "revolving credit plan" when a "credit grantor" offers the plan to a consumer borrower pursuant to that subtitle. The term "credit grantor" includes "[a]ny person who acquires or obtains the assignment of a revolving credit plan made under this subtitle." CL § 12-901(f)(2)(iii). Among other things, this subtitle limits the interest and fees that may be charged and collected in connection with the plan. This subtitle also makes certain credit grantors subject to the licensing authority of the Commissioner of Financial Regulation. CL § 12-915 provides that "a credit grantor making a loan or extension of credit under this subtitle" is subject to certain licensing provisions set forth in the Financial Institutions Article, unless the credit grantor or the loan or extension of credit is exempt from those provisions.

The Appellate Court of Maryland held that the licensing requirements of CL § 12-915 apply not only to an original credit grantor but also to a party that acquires or obtains the assignment of a revolving credit plan made under this subtitle. The Court also held that foreign statutory trusts are not exempt from these licensing requirements.

**FORECLOSURE—EFFECT OF PRIOR JUDGMENT ON PROMISSORY NOTE**

When a borrower defaults on a promissory note that is secured by a deed of trust on real property, the lender has more than one remedy available. The lender may seek to foreclose the lien on the property pursuant to the deed of trust. In addition, the lender may proceed against the borrower personally in an action to recover under the promissory note. If the lender first obtains a personal judgment against the borrower under the promissory note, the lender's claims under the deed of trust do not merge into the judgment. In those circumstances, the lender may foreclose on the property pursuant to the deed of trust, to the extent that the judgment remains unsatisfied.

**FORECLOSURE—RIGHT TO FORECLOSE**

Section 7-103(a) of the Real Property Article provides: "The title to any promissory note, other instrument, or debt secured by a mortgage, both before and after the maturity of the note, other instrument, or debt, conclusively is presumed to be vested in the person holding the record title to the mortgage." By operation of this statute, when a party records an assignment of the deed of trust in the land records of the county where the property is located, the assignee establishes a conclusive presumption of its title to "any

promissory note, other instrument, or debt secured by" the deed of trust.  This category is broad enough to include the debt owed under a judgment entered against the borrower in an action to recover under the underlying promissory note.  Because this statute creates a conclusive presumption, this presumption cannot be overcome by evidence to the contrary.

**FORECLOSURE—DEFENSES**

There is no statute of limitations applicable to foreclosure actions in Maryland.

**FORECLOSURE—DUE PROCESS**

The Appellate Court of Maryland rejected a property owner's contention that the circuit court deprived him of property without due process of law when it denied his motion to stay or dismiss a foreclosure action without a hearing.  The property owner failed to demonstrate that the circuit court violated any procedural requirements when it denied the motion consistent with the standards set forth in Md. Rule 14-211.  The property owner failed to demonstrate that the procedures set forth in the Maryland Rules fail to provide adequate notice or the opportunity to be heard.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1009

September Term, 2023

_____

THE ESTATE OF H. GREGORY BROWN

v.

CARRIE M. WARD, ET AL.

_____

Arthur,
Beachley,
Eyler, Deborah S.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: April 19, 2024

*Tang, J., did not participate in the Court's
decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal concerns a deed of trust on residential property, securing the debt owed under a home equity line of credit agreement. In 2014, the successors to the lender obtained a personal judgment against the borrower in the amount of $88,500.00, based on the borrower's default on his obligations under the line of credit agreement.

Nearly ten years later, a Delaware statutory trust obtained an assignment of the deed of trust and initiated an action to foreclose the lien on the property. The personal representative of the borrower's estate moved to dismiss the foreclosure action or to stay the sale of the property. The Circuit Court for Baltimore County denied the motion. The personal representative has appealed to this Court, raising an array of challenges to the decision to allow the foreclosure action to proceed.

As explained in this opinion, we reject all but one of these challenges. The personal representative argues that the statutory trust has no right to foreclose because it has not obtained a license that is required when a credit grantor makes a revolving credit plan that is secured by a lien on residential real property.[1] For its part, the statutory trust contends that this licensing requirement does not apply to an assignee of a revolving credit plan or to a foreign statutory trust. These two contentions lack merit.

Accordingly, we will vacate the order denying the motion to dismiss the foreclosure action or to stay the sale of the property. We will remand this case for further proceedings consistent with this opinion.

---

[1] Md. Code (1975, 2013 Repl. Vol., 2022 Supp.), § 12-915(b) of the Commercial Law Article.

FACTUAL AND PROCEDURAL BACKGROUND

**A.      The Home Equity Line of Credit Agreement and Promissory Note**

During his lifetime, H. Gregory Brown owned a residential property located in Randallstown in Baltimore County.  He financed the purchase of the property through a home mortgage loan.[2]  The property served as his principal residence beginning in 2001.

On October 24, 2006, Mr. Brown entered into an agreement with GN Mortgage, LLC, titled "Home Equity Line of Credit Agreement and Promissory Note."  Under this agreement, GN Mortgage agreed to give Mr. Brown an initial advance and line of credit in the maximum principal amount of $88,500.00 for a period of 15 years.  Mr. Brown agreed to repay the amounts borrowed, along with certain interest and finance charges.  The agreement specified that, to secure repayment, GN Mortgage had taken a security interest in the Brown property by way of a separate security instrument, also dated October 24, 2006.

The line of credit agreement provided: "This loan is made under Subtitle 9, Credit Grantor Revolving Credit Provisions of Title 12 of the Commercial Law Article of the Annotated Code of Maryland."  That subtitle governs a "revolving credit plan" where a creditor grantor offers a credit plan to a borrower and makes a written election to offer

---

[2] In Maryland, financing of residential real estate is typically accomplished when the buyer executes a promissory note and a deed of trust securing the debt owed under the promissory note. *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 155 (2021).  "Although a deed of trust may be technically distinct from a common law mortgage, it is common both colloquially and in legal parlance to use the term 'mortgage' as a shorthand for financing that involves a deed of trust."  *Id.* (citing *Legacy Funding LLC v. Cohn*, 396 Md. 511, 513-14 n.1 (2007)).

the plan pursuant to that subtitle.  Md. Code (1975, 2013 Repl. Vol., 2022 Supp.), § 12-913.1(a) of the Commercial Law Article ("CL").

As used in that subtitle, the term "[r]evolving credit plan" describes a "plan that contemplates the extension of credit under an account governed by an agreement between a credit grantor and a borrower[.]"  CL § 12-901(m).  Under this type of plan, a credit grantor permits the borrower to make purchases or obtain loans from time to time; the amounts of the purchases and loans are charged to the borrower's account; the borrower is required to pay the amounts charged to the account; and the credit grantor may charge and collect certain interest and finance charges on the amounts due.  CL § 12-901(m)(1)-(4).  In connection with the plan, the credit grantor may "[t]ake any security as collateral as may be acceptable to the credit grantor," including "real property[.]"  CL § 12-902(a)(2)(i)-(ii).

### B.     Deed of Trust

On the same day that Mr. Brown and GN Mortgage entered into the line of credit agreement, they executed a separate security instrument titled the "Deed of Trust."  The deed of trust named GN Mortgage as the lender, named Mr. Brown as the grantor, and named two persons as trustees.  The deed of trust also named Mortgage Electronic Registration Systems, Inc. (MERS), as the beneficiary under the instrument, solely as nominee for GN Mortgage and its successors and assigns.  After execution of the deed of trust, GN Mortgage recorded that document in the land records for Baltimore County.

The deed of trust included a covenant in which Mr. Brown promised to make all payments of the "Secured Debt."  The deed of trust defined the "Secured Debt" as the

3

debt incurred under the terms of the home equity line of credit agreement "and all . . . extensions, renewals, modifications or substitutions" of that agreement. The deed of trust provided that, if Mr. Brown defaulted on his payment obligations, the lender was authorized to accelerate the debt and to foreclose on the lien on the Brown property. In that event, Mr. Brown authorized the trustees, at the lender's request, to sell the Brown property and to use the proceeds to repay the debt owed to the lender.

Over the next two years, Mr. Brown made payments to GN Mortgage in accordance with the line of credit agreement. As of September 2008, however, Mr. Brown stopped making the payments owed under the agreement.

### C. Personal Judgment Against Mr. Brown in Favor of U.S. Bank

In November 2013, five years after Mr. Brown stopped making payments, a party identifying itself as "U.S. Bank, N.A., as Trustee for Home Equity Loan Trust 2007-HSA1" (hereinafter "U.S. Bank"), filed suit against Mr. Brown in the Circuit Court for Baltimore County. U.S. Bank claimed that Mr. Brown had defaulted on his obligations under the line of credit agreement and promissory note. U.S. Bank demanded damages in the amount of $85,000.00.

Along with the complaint, U.S. Bank produced a copy of the home equity line of credit agreement and promissory note. The document included a chain of special indorsements, beginning with an indorsement from GN Mortgage and ending with an indorsement to U.S. Bank. This chain included: an indorsement from G.N. Mortgage to "Guaranty Bank, F.S.B."; an indorsement from Guaranty Bank, F.S.B., to "Residential Funding Company, LLC"; and an indorsement from Residential Funding Company, LLC,

to "LaSalle Bank, N.A., as Indenture Trustee." In an allonge to the promissory note, a party named "U.S. Bank, N.A., as Successor Trustee to Bank of America, N.A., as Trustee, successor by merger to LaSalle Bank, N.A., as Indenture Trustee" specially indorsed the note to U.S. Bank. In a further allonge, U.S. Bank made a blank indorsement, which stated "PAY TO THE ORDER OF," but did not identify a party to which the instrument was made payable.

After U.S. Bank filed suit, Mr. Brown filed no answer. U.S. Bank moved for summary judgment, and Mr. Brown filed no response to the motion. On March 6, 2014, the circuit court granted the motion and entered a judgment against Mr. Brown in favor of U.S. Bank in the amount of $85,000.00. Shortly thereafter, U.S. Bank moved to revise the judgment, asserting that it had made a "clerical error" in its previous filings and that the "correct balance" of the outstanding debt was $88,500.00. Mr. Brown filed no response to the motion to revise. On April 9, 2014, the circuit court entered a revised final judgment against Mr. Brown and in favor of U.S. Bank in the amount of $88,500.00.

In August 2014, Mr. Brown filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. A few months later, the bankruptcy court granted Mr. Brown a discharge under 11 U.S.C. § 727. The order stated that the discharge "eliminates a debtor's legal obligation to pay a debt that is discharged" and "prohibits any attempt to collect from the debtor a debt that has been discharged." It further stated: "However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that

lien was not avoided or eliminated in the bankruptcy case."

### D.	Proceedings for the Estate of H. Gregory Brown

Mr. Brown died on February 28, 2015.  On his behalf, a petition for the administration of a small estate was filed in Baltimore City.  Mr. Brown's son, Gregory Brown, served as personal representative of the estate.

In the years since the opening of the estate, the Brown property has never been conveyed to any party.  Consequently, the estate of Mr. Brown continues to own the property.  Two surviving family members, Mr. Brown's mother and his brother, have continued to reside at the property.

### E.	Foreclosure Proceedings Initiated by FirstKey

On September 28, 2022, a party identifying itself as "FirstKey Master Funding, 2021-A Collateral Trust, U.S. Bank Trust National Association as Collateral Trust Trustee" (hereinafter "FirstKey"), sent a notice of intent to foreclose to the personal representative of Mr. Brown's estate.  FirstKey described itself as the "secured party" under the deed of trust.

On October 4, 2022, a party named "Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for GN Mortgage, LLC, its successors and assigns" executed an agreement assigning "all of [its] interest" in the deed of trust to FirstKey.  Those parties recorded the assignment in the land records for Baltimore County.

A few months later, FirstKey appointed nine persons as substitute trustees under the deed of trust.  On February 7, 2023, the substitute trustees initiated a foreclosure action by filing an order to docket in the Circuit Court for Baltimore County.  The

substitute trustees sought to foreclose the lien on the Brown property pursuant to the power of sale in the deed of trust. The substitute trustees named "H. Gregory Brown (Deceased)" as a defendant in the proceedings.

Along with the order to docket, the substitute trustees filed supporting documents as required by Md. Rule 14-207. Among other things, an order to docket must be accompanied by "a copy of the lien instrument supported by an affidavit" affirming "that it is a true and accurate copy[.]" Md. Rule 14-207(b)(1). Pursuant to this provision, the substitute trustees filed the deed of trust dated October 24, 2006, and subsequently recorded in the land records of Baltimore County. In an affidavit, one of the substitute trustees affirmed that this document was a true and accurate copy of the lien instrument.

Under Md. Rule 14-207(b)(2), an order to docket must be accompanied by "an affidavit by the secured party, the plaintiff, or the agent or attorney of either" affirming "that the plaintiff has the right to foreclose[.]" Pursuant to this provision, the substitute trustees provided an affidavit from FirstKey's loan servicer. The loan servicer affirmed: that Mr. Brown had defaulted under the terms of the loan agreement secured by the deed of trust; that the holder of a beneficial interest in the deed of trust had given proper notice of the default; that the default had not been cured; and that the holder had invoked the power of sale in the deed of trust. The loan servicer stated that the default occurred on September 21, 2008, when Mr. Brown failed to make a payment due before that date.

Under Md. Rule 14-207(b)(2), an order to docket must also be accompanied by "a statement of the debt remaining due and payable[.]" Pursuant to this provision, the loan servicer affirmed that the total amount due was $180,504.29 as of December 2022. This

7

total consisted of: $88,500.00 for the "Principal Balance"; $83,969.29 for "Interest at 6.625%" from the date of the default through December 2022; $5,305.00 for an "Escrow Advance"; and $2,730.00 for "Attorney fees and costs."

Under Md. Rule 14-207(b)(3), an order to docket must be accompanied by "a copy of any separate note or other debt instrument supported by an affidavit" affirming "that it is a true and accurate copy and certifying ownership of the debt instrument[.]" Pursuant to this provision, the substitute trustees filed a copy of the home equity line of credit and promissory note, along with the chain of indorsements and allonges. As mentioned previously, this chain included four special indorsements, beginning with an indorsement from GN Mortgage and ending with an indorsement to U.S. Bank. The final indorsement was a blank indorsement from U.S. Bank, which stated "PAY TO THE ORDER OF" but did not identify a payee. In an affidavit, the loan servicer affirmed that this document was a true and accurate copy of the debt instrument. The loan servicer asserted that FirstKey "is the current owner" of the debt instrument.

On May 31, 2023, the estate of H. Gregory Brown, by its personal representative Gregory Brown, filed a pleading styled as a "Counter Complaint" in the foreclosure action, raising "counterclaims" against the substitute trustees and FirstKey. Another party, named as "Warren Brown as the assignee of Dorothy White," joined the action as a "Counter Plaintiff[]" under this pleading.[3]

---

[3] The pleading did not disclose Ms. White's interest in the action. From the record, it is unclear whether Ms. White is Mr. Brown's mother, who resides at the Brown property.

The counterclaim alleged that FirstKey and the substitute trustees had engaged in prohibited debt collection practices by initiating the foreclosure action. In the counterclaim, the personal representative sought damages for alleged violations of the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act. In addition, the personal representative requested a declaration stating that the substitute trustees and FirstKey are not entitled to foreclose on the Brown property and an injunction barring them from pursuing the foreclosure. The counterclaim included a request for a jury trial on all legal claims.

Meanwhile, the parties participated in foreclosure mediation at the request of the personal representative. In June 2023, the mediator reported that the foreclosure mediation did not result in an agreement between the parties. In accordance with Md. Rule 14-209.1(f)(2), the court issued an order authorizing FirstKey to schedule and advertise the foreclosure sale, subject to personal representative's right to file a motion to stay or dismiss the foreclosure action.

## F. Motion to Dismiss Foreclosure Action or to Stay the Sale

On June 27, 2023, the personal representative moved to dismiss the foreclosure action or to stay the sale of the property under Md. Rule 14-211. The personal representative contended that FirstKey had no right to foreclose and that the action should be dismissed on that basis. In the alternative, the personal representative asked the court to stay the foreclosure action pending the resolution of the counterclaims against the substitute trustees and FirstKey. The personal representative requested a hearing on the motion.

In an affidavit supporting the motion, the personal representative informed the court that Mr. Brown's mother and Mr. Brown's brother continue to reside at the Brown property. The personal representative stated that the "first lien mortgage on the property," property taxes, and property insurance were all "current." The personal representative stated that, after the initiation of the foreclosure action, he first learned of the judgment against Mr. Brown and in favor of U.S. Bank. According to the personal representative, no party had filed any claim related to this debt, during the administration of Mr. Brown's estate.[4]

In his motion, the personal representative contended that FirstKey could not pursue a foreclosure action under the deed of trust because U.S. Bank had previously obtained a judgment against Mr. Brown in the action to recover under the promissory note. The personal representative argued that "the note and the related deed of trust [had] merged into" the judgment in favor of U.S. Bank. According to the personal representative, therefore, there was "no enforceable deed of trust . . . to foreclose upon."

In a separate argument, the personal representative contended that FirstKey was not entitled to pursue a foreclosure action because FirstKey had not satisfied certain licensing requirements. The personal representative relied on CL § 12-915, which provides that a "credit grantor making a loan or extension of credit" under the Credit Grantor Revolving Credit Provisions subtitle is subject to certain "licensing,

---

[4] Section 8-103 of the Estates and Trusts Article of the Maryland Code establishes certain time limits for filing claims against the estate of a decedent. "Nothing in this section . . . affect[s] or prevent[s] an action or proceeding to enforce a mortgage, pledge, judgment or other lien, or security instrument on property of the estate." *Id.* § 8-103(d).

10

investigatory, enforcement and penalty provisions" set forth in the Financial Institutions Article.

In addition, the personal representative contended that a statute of limitations barred the foreclosure action. The personal representative observed that the default under the line of credit agreement had occurred more than 13 years before the substitute trustees initiated the foreclosure action. He asserted that the applicable "statute of limitations" for an action "to collect upon a note or mortgage secured by a deed of trust is three years."

The personal representative also argued that FirstKey had no right to foreclose because the claimed right to foreclose was based on "a purported endorsement in blank[.]" The personal representative argued that the home equity line of credit agreement was not a "negotiable instrument" and that Maryland statutes do not authorize "a blank endorsement of a non-negotiable instrument[.]"

On July 11, 2023, the substitute trustees and FirstKey filed their response in opposition to the motion to dismiss the foreclosure action or to stay the sale of the property. They asserted that FirstKey was "the owner of the debt instrument" because FirstKey had received an assignment of the deed of trust. They provided a copy of the assignment of the deed of trust dated October 4, 2022, and subsequently recorded in the land records of Baltimore County. As mentioned previously, in that instrument, "Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for GN Mortgage, LLC, its successors and assigns" had assigned "all of [its] interest" in the deed of trust to FirstKey. The substitute trustees and FirstKey cited section 7-103(a) of the Real Property Article of the Maryland Code, which states that "[t]he title to any

11

promissory note, other instrument, or debt secured by a mortgage . . . conclusively is presumed to be vested in the person holding record title to the mortgage." They argued that FirstKey, as the "record assignee of the deed of trust," was "conclusively presumed" to be the owner of the debt secured by the deed of trust.

Opposing the motion, the substitute trustees and FirstKey contended that, when a lender obtains a money judgment against a borrower based on a promissory note, the lender does not lose the right to enforce a separate deed of trust through a proceeding to foreclose a lien on real property. They argued that, until the debt is satisfied, the lender is entitled to pursue relief both under the promissory note and under the deed of trust, either concurrently or consecutively.

The substitute trustees and FirstKey also contended that FirstKey, as an assignee of the deed of trust, was not subject to the licensing requirements of the Credit Grantor Revolving Credit Provisions subtitle. They observed that the statute imposes a licensing requirement upon "[a] credit grantor making a loan or extension of credit under th[at] subtitle[.]" CL § 12-915(a)-(b). They argued that this statute did not apply to FirstKey because FirstKey did not make the initial loan or extension of credit, but merely obtained an assignment of the deed of trust. They also asserted that FirstKey is a foreign statutory trust and argued that the statutory licensing requirements "do not apply" to a foreign statutory trust.

Finally, the substitute trustees and FirstKey disputed the contention that any statute of limitations barred the foreclosure action. They argued that, under Maryland law, foreclosure proceedings are not subject to a three-year statute of limitations or any

12

other statute of limitations.

G. **Order Denying the Motion to Stay or Dismiss**

On July 20, 2023, the circuit court entered an order denying the personal representative's motion to dismiss the foreclosure action or to stay the sale of the property. The court stated that it had given consideration to the arguments made in support of the motion and in opposition to the motion. The court concluded: "the Motion does not state on its face a valid defense to the validity of the foreclosing lien or the right of the Plaintiffs to foreclose on the subject property[.]"

On the same day that the court entered its order denying the motion to stay or dismiss, the personal representative noted an appeal to this Court.[5] Within the next four days, the personal representative filed two emergency motions, one in the circuit court and one in this Court, requesting a stay of the foreclosure sale pending the resolution of his appeal. The motions stated that the substitute trustees had scheduled a sale of the property to occur on July 27, 2023.

One day before the scheduled sale, this Court granted the emergency motion and issued an order staying the foreclosure proceedings in the circuit court pending further order of this Court. The circuit court denied the other motion, on the ground that the

---

[5] The order denying the motion to stay or dismiss is not appealable as a final judgment, because the order did not fully adjudicate or complete the adjudication of all claims in the action. The order, however, is immediately appealable under Maryland Code (1974, 2020 Repl. Vol., Supp. 2023), § 12-303(3)(iii) of the Courts and Judicial Proceedings Article, on the premise that it is tantamount to an order refusing to grant an injunction. *See*, *e.g.*, *Huertas v. Ward*, 248 Md. App. 187, 207 (2020).

request for a stay became moot when this Court stayed the proceedings.[6]

In accordance with Md. Rule 8-501, the parties agreed to include certain parts of the record in a joint record extract for this appeal. The personal representative also sought to include other materials not contained in the record. Chiefly, these additional materials included documents from U.S. Bank's collection action against Mr. Brown and from Mr. Brown's Chapter 7 bankruptcy proceedings. The personal representative reproduced those materials in an appendix to his appellate brief and made a motion asking this Court to take judicial notice of those materials. The substitute trustees and FirstKey moved to strike the personal representative's appendix. This Court granted the motion for judicial notice and denied the motion to strike the appendix.[7]

---

[6] In a subsequent order, this Court specified that the stay would continue "pending further Order of this Court and conditioned upon [the estate] filing a bond or other security performance of a bond" in the amount of $88,500.00. The personal representative made a motion in the circuit court, asking the court to accept a proposed lien on the property as alternative security. The circuit court denied that motion. The personal representative noted another appeal from the order denying the motion to accept a proposed lien as other security. That separate appeal remains pending in this Court as *Estate of H. Gregory Brown v. Carrie M. Ward, et al.*, No. 1522, Sept. Term 2023.

[7] The substitute trustees and FirstKey did not rebut the personal representative's contention that the documents included in the appendix are the types of materials subject to judicial notice. *See generally In re H.R.*, 238 Md. App. 374, 401-02 (2018) (stating that "'[p]ublic records such as court documents' are some of the most common of the 'types of information [that] can fall under the umbrella of judicial notice'") (quoting *Abrishamian v. Washington Med. Grp., P.C.*, 216 Md. App. 386, 413 (2014)). Rather, the basis for the objection was that these materials were not part of the record considered by the circuit court. Under the circumstances, the materials reproduced in the appendix do not introduce material facts that were not presented to the circuit court. Before the circuit court made its ruling, the parties had informed the court that U.S. Bank had previously obtained a personal judgment against Mr. Brown for claims on the promissory note. In addition, the substitute trustees and FirstKey had informed the court of Mr. Brown's bankruptcy discharge and had provided a copy of the discharge order.

DISCUSSION

The authority to foreclose a lien on real property is "derived from the power-of-sale provision in [a] deed of trust or other security instrument." *Shepherd v. Burson*, 427 Md. 541, 544 (2012). "In a deed of trust, the power of sale enables the trustee to sell the property upon the debtor's default, in order to reimburse the lender for the debt" secured by the deed of trust. *Fagnani v. Fisher*, 418 Md. 371, 383 (2011). Title 14 of the Maryland Rules "provid[es] a summary procedure for a foreclosure pursuant to a power of sale, . . . premised on the requirement that the lender submit a true and accurate copy of the lien instruments." *Yacko v. Mitchell*, 249 Md. App. 640, 650-51 (2021). Under these rules, "any individual authorized to exercise a power of sale may institute an action to foreclose a lien" (Md. Rule 14-204(a)) by filing an order to docket (Md. Rule 14-207(a)(1)) in the circuit court.

"Before a foreclosure sale takes place," a borrower or property owner "may file a motion to 'stay the sale of the property and dismiss the foreclosure action.'" *Bates v. Cohn*, 417 Md. 309, 318 (2010) (quoting Md. Rule 14-211(a)(1)). "The function of such a motion is 'to raise a challenge to the foreclosure action itself[,]' i.e., a challenge 'to whether there should be a sale at all.'" *Huertas v. Ward*, 248 Md. App. 187, 202 (2020) (quoting *Hood v. Driscoll*, 227 Md. App. 689, 694 (2016)). The motion must "state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose[.]" Md. Rule 14-211(a)(3)(B). The court may deny the motion without a hearing if it concludes that the motion "does not on its face state a valid defense to the validity of the

15

lien or the lien instrument or to the right of the plaintiff to foreclose[.]" Md. Rule 14-211(b)(1)(C). On the other hand, if the motion is timely, is in substantial compliance with Rule 14-211, and sufficiently states a valid defense, the court must hold a hearing to adjudicate the merits of the defense before deciding whether to grant or deny the motion. Md. Rule 14-211(b)(2).

The decision to grant or deny injunctive relief in a foreclosure action generally is within the discretion of the trial court. *Anderson v. Burson*, 424 Md. 232, 243 (2011). Accordingly, this Court reviews a decision to deny a motion for injunctive relief under Md. Rule 14-211 to determine whether the trial court abused its discretion. *Mitchell v. Yacko*, 232 Md. App. 624, 641 (2017). To the extent that the decision turns on a question of law, however, this Court decides those questions without deference to the trial court. *See Blackstone v. Sharma*, 461 Md. 87, 110-11 (2018) (citing *Anderson v. Burson*, 424 Md. at 243). Moreover, "the 'standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct.'" *Blackstone v. Sharma*, 461 Md. at 110 (quoting *Davis v. Frostburg Facility Operations, LLC*, 457 Md. 275, 284 (2018)). In addition, the question of whether the moving party has sufficiently raised a valid defense, thus entitling the party to a full hearing on the merits under Md. Rule 14-211, is a question of law. *Buckingham v. Fisher*, 223 Md. App. 82, 93 (2015). Therefore, this Court reviews a trial court's "decision to decline to hold an evidentiary hearing on the merits to determine whether or not it was legally correct." *Id.*

In this appeal, the personal representative contends that the circuit court erred or abused its discretion when it denied his motion to dismiss the foreclosure action or to stay

16

the sale of the property under Md. Rule 14-211 without conducting a hearing. Although

the personal representative presents five questions for review, some questions address

multiple or overlapping issues. This opinion will address each issue raised in the

personal representative's brief, but not necessarily in the order in which they were

presented.[8]

---

[8] The appellant's brief presents five numbered questions. The personal representative characterized the final two questions on this list as "alternative" questions, which he asks this Court to address only if this Court does not rule in his favor in response to the first three questions. All questions are reproduced below:

1. Through its appointed Substitute Trustees, may a stranger to a non-assigned Maryland judgment subsequently utilize a purported contractual right for a summary action which was not clearly preserved in the loan documents or by the prior Maryland judgment? []

2. Did the Circuit Court abuse its discretion or err by denying Appellant's timely MD. RULE 14-211 Motion to Dismiss/Stay the foreclosure sale by failing to hold any hearing and also permitting an unlicensed professional to use a Maryland court for its illegal, unlicensed conduct? []

3. Does Title 14 of the Maryland Rules foreclosure process, as carried out by the Circuit Court in this action, deny parties like the Appellant due process and a fair and reasonable opportunity to challenge a claimed right to foreclose? []

4. If the deed of trust and note did not merge with the Prior Judgment, may a purported secured party foreclose under Title 14 of the Maryland Rules without strict compliance with the requirements of Maryland's Credit Grantor Revolving Credit Provisions ("OPEC"), COM. LAW § 12-901, *et seq.* which governs the subject loan and seek to collect material sums not owed by Maryland law? []

5. May a zombie debt buyer seek to collect by foreclosure on a HELOC Loan sums claimed to be owed related to a consumer debt alleged due and owing more three years before the commencement of the action based upon a note endorsed in blank to give it the appearance of the right to collect in a summary foreclosure proceeding? []

First, this opinion will address the contention that FirstKey is required to obtain a license under the Credit Grantor Revolving Credit Provisions subtitle before FirstKey may pursue this foreclosure action. The substitute trustees and FirstKey argue that this licensing requirement does not apply to FirstKey because FirstKey is an assignee and because FirstKey is a foreign statutory trust. We see no merit in the arguments that the substitute trustees and FirstKey have made.

The remainder of this opinion will address the personal representative's various other challenges to the court's decision to allow this foreclosure action to proceed. We reject each of those challenges.

## I.    Credit Grantor Licensing Requirements

The personal representative contends that the substitute trustees and FirstKey have no right to foreclose under the deed of trust because FirstKey has not obtained a license required under the Credit Grantor Revolving Credit Provisions subtitle of the Commercial Law Article.

In response, the substitute trustees and FirstKey advance two theories. First, they contend that this licensing requirement does not apply to a party that acquires an assignment of a revolving credit plan. Second, they contend that this licensing requirement does not apply to a particular type of entity, a foreign statutory trust. As explained below, we see no support for these contentions.

As mentioned earlier, the home equity line of credit agreement and promissory note included the following express election: "This loan is made under Subtitle 9, Credit Grantor Revolving Credit Provisions of Title 12 of the Commercial Law Article of the

18

Annotated Code of Maryland." That subtitle governs a revolving credit plan where a "creditor-grantor" offers a plan to a borrower and makes a written election to offer the plan pursuant to that subtitle. Md. Code (1975, 2013 Repl. Vol., 2022 Supp.), § 12-913.1(a) of the Commercial Law Article ("CL").[9]

The General Assembly enacted the Credit Grantor Revolving Credit Provisions subtitle, also known as "OPEC," in 1983 along with its companion, the Credit Grantor Closed End Credit Provisions subtitle, also known as "CLEC." *Ford Motor Credit Co., LLC v. Roberson*, 420 Md. 649, 662 (2011). In general, OPEC governs certain "open end" credit agreements, while CLEC governs certain "closed end" credit agreements. *Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 197 (1992).[10] Among other things, these statutes "set[] limits on the rate of interest, as well as other fees, that may be charged by a lender—referred to as a 'credit grantor' in the statute[s]." *Patton v. Wells Fargo Fin. Maryland, Inc.*, 437 Md. 83, 89 (2014). These statutes "provide[] consumer protection to borrowers[,]" "establish[] parameters and requirements with which credit grantors must comply[,]" and "establish[] various remedies to a borrower if the credit grantor fails to

_____

[9] The deed of trust states that it is "governed by the laws as agreed to in the Secured Debt[.]" The term "Secured Debt" refers to the debt owed under the home equity line of credit agreement and promissory note.

[10] Under an "open end" credit arrangement, such as a revolving credit plan, "the borrower is able to use credit to buy goods or secure loans on a continuing basis so long as the outstanding balance does not exceed a specified limit." *Patton v. Wells Fargo Fin. Maryland, Inc.*, 437 Md. 83, 88 (2014). Under a "closed end" credit arrangement, the borrower receives "a loan or extension of credit in which the borrower receives the benefit of the proceeds of the loan immediately and repays the principal, together with interest and other charges, in the future, usually in installments." *Id.*

19

comply" with the statutory requirements. *Lyles v. Santander Consumer USA Inc.*, 478 Md. 588, 594 (2022).

The Credit Grantor Revolving Credit Provisions subtitle includes the following definition of the term "credit grantor" as used in that subtitle:

> "Credit grantor" means any individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity making a loan or other extension of credit under this subtitle which is incorporated, chartered, or licensed pursuant to State or federal law, the lending operations of which are subject to supervision, examination, and regulation by a State or federal agency or which is licensed under Title 12, Subtitle 4 of the Financial Institutions Article or is a retailer.

CL § 12-901(f)(1).

As originally enacted, this definition did not specify whether the term "credit grantor" includes an assignee. *See* 1983 Md. Laws ch. 143, § 1. In 1990, the General Assembly enacted legislation purporting to make "[c]orrections" to this subtitle and to its companion subtitle. *See* 1990 Md. Laws ch. 458, preamble. Among other changes, this legislation revised the statutory definition of "credit grantor" to specify that the definition includes an assignee. The current definition of "'[c]redit grantor' includes . . . [a]ny person who acquires or obtains the assignment of a revolving credit plan made under this subtitle." CL § 12-901(f)(2)(iii).

Subject to certain exceptions, this subtitle makes certain credit grantors subject to the licensing, investigatory, enforcement, and penalty-imposition powers of the Commissioner of Financial Regulation. These licensing requirements for credit grantors have been a feature of the statutory scheme since its first enactment. *See Biggus v. Ford*

20

*Motor Credit Co.*, 328 Md. at 198. The current version of the Credit Grantor Revolving Credit Provisions subtitle provides, in relevant part: "A credit grantor making a loan or extension of credit under this subtitle is subject to the licensing, investigatory, enforcement and penalty provisions of Title 11, Subtitle 3 of the Financial Institutions Article unless the credit grantor or the loan or extension of credit is exempt under Title 11, Subtitle 3 of the Financial Institutions Article." CL § 12-915(a).

Subtitle 3 of Title 11 of the Financial Institutions Article sets forth a licensing requirement for any person or entity in the business of making "installment loans." Under these provisions, a person may not "[e]ngage in the business of making installment loans" or "[m]ake more than 5 installment loans a year" or "[e]ngage in the business of a credit services business[,]" unless the person is licensed by the Commissioner. Md. Code (1980, 2020 Repl. Vol.), § 11-303 of the Financial Institutions Article. The term "installment loan" includes a loan or extension of credit made under the Credit Grantor Revolving Credit Provisions subtitle. *Id.* § 11-301(b).

The Credit Grantor Revolving Credit Provisions subtitle imposes an additional licensing requirement in connection with a loan or extension of credit that is secured by a lien on residential real property. It provides, in pertinent part:

> In addition to any license which may be required by subsection (a) of this section [CL § 12-915(a)], a credit grantor making a loan or extension of credit under this subtitle secured by any lien on residential real property is subject to the licensing, investigatory, enforcement and penalty provisions of Title 11, Subtitle 5 of the Financial Institutions Article unless the credit grantor or the loan or extension of credit is exempt under Title 11, Subtitle 5 of the Financial Institutions Article.

CL § 12-915(b).

21

The referenced provisions of Subtitle 5 of Title 11 of the Financial Institutions Article are known as the Maryland Mortgage Lender Law. Under those provisions, a person "may not act as a mortgage lender" unless the person has obtained a license from the Commissioner or the person is exempt from this licensing requirement. Md. Code (1980, 2020 Repl. Vol.), § 11-504 of the Financial Institutions Article. In that context, the term "'[m]ortage lender' means any person who: (i) [i]s a mortgage broker; (ii) [m]akes a mortgage loan to any person; or (iii) [i]s a mortgage servicer." *Id.* § 11-501(k)(1).

To qualify for either type of license, the applicant must demonstrate to the satisfaction of the Commissioner that the applicant has the requisite fitness to engage in the licensed activity. To qualify under the installment loan licensing provisions, the applicant must demonstrate that the applicant has "sufficient experience, character, financial responsibility, and general fitness to: (i) [c]ommand the confidence of the public; and (ii) [w]arrant the belief that the business will be operated lawfully, honestly, fairly, and efficiently." Md. Code (1980, 2020 Repl. Vol.), § 11-205(3) of the Financial Institutions Article.[11] Similarly, to qualify under the Maryland Mortgage Lender Law, the applicant must demonstrate that the applicant "is of good moral character and has sufficient financial responsibility, business experience, and general fitness to: (1)

---

[11] The qualifications of the installment loans licensing provisions are set forth in a separate subtitle. *See* Md. Code (1980, 2020 Repl. Vol.), § 11-304 of the Financial Institutions Article (providing that "[a] license under this subtitle shall be applied for and issued in accordance with, and is subject to, the licensing and investigatory provisions of Subtitle 2 of this title, the Maryland Consumer Loan Law—Licensing Provisions").

22

[e]ngage in business as a mortgage lender; (2) [w]arrant the belief that the business will be conducted lawfully, honestly, fairly, and efficiently; and (3) [c]ommand the confidence of the public." *Id.* § 11-506(a).

The personal representative contends that, when FirstKey obtained an assignment of the deed of trust securing the revolving line of credit, FirstKey became a "credit grantor" within the meaning of the Credit Grantor Revolving Credit Provisions subtitle. The personal representative emphasizes that the statute explicitly states that the term "credit grantor" includes "[a]ny person who acquires or obtains the assignment of a revolving credit plan" made under that subtitle. CL § 12-901(f)(2)(iii). The personal representative notes that various types of businesses are exempt from the licensing requirements imposed by this subtitle. *See* Md. Code (1980, 2020 Repl. Vol.), § 11-302(b) of the Financial Institutions Article (stating that the installment loans licensing provisions "do not apply" to certain businesses or entities "organized under the laws of this State or otherwise qualified to do business in this State[,]" such as a "banking institution[,]" a "national banking association[,]" a "federal or State savings and loan association[,] and a "federal or State credit union"); *id.* § 11-502(b) (providing that the provisions of the Maryland Mortgage Lender Law "do not apply" to certain businesses or entities, such as a "bank, trust company, savings bank, savings and loan association, or credit union incorporated or chartered under the laws of this State or the United States or any other–state bank having a branch in this State"). The personal representative argues, however, that FirstKey, a statutory trust organized under the laws of Delaware, does not qualify for any of these statutory exemptions.

23

The personal representative also relies on the proposition that, under Maryland law, the assignee of a mortgage loan generally "succeed[s] to the same rights and obligations of the original lender." *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 153 (2021). In *Kemp*, the Court considered whether a provision of the Maryland Usury Law, prohibiting a "lender" from charging certain property inspection fees, also applied to an assignee of a home mortgage loan. *Id.* at 168. The statute in question "defined 'lender' as 'a person who makes a loan under this subtitle.'" *Id.* at 172 (quoting Md. Code (1974, 2013 Repl. Vol.), § 12-101(f) of the Commercial Law Article). The statute did not specify whether this term included an assignee. *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 173. "Noting the reference to making a loan and the absence of the word 'assignee'" in this definition, a company that had acquired an assignment of a mortgage loan argued that the prohibition on inspection fees "d[id] not apply to an assignee of a mortgage loan[.]" *Id.*

The Court rejected that interpretation. It observed that the Usury Law included "provisions[] which appear[ed] to apply over the life of a loan, suggest[ing] that the term 'lender' includes not only an originator of a loan but also an assignee." *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 174. The term "lender," the Court reasoned, was ambiguous, when viewed in the context of its usage throughout the statute. *Id.* The Court concluded that the statutory language was "at best unclear" as to "whether the term 'lender' in CL § 12-101(f) [was] limited to the originator of a mortgage loan or also encompass[ed] an assignee of the originator[.]" *Id.*

Under common law, the Court explained, the assignee of a mortgage loan

"generally has the same rights and responsibilities as its assignor—no more, no less." *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 156. The Court reasoned that an interpretation that would exempt an assignee from the restrictions applicable to the assignor would "implicitly abrogate[] the longstanding common law rule that an assignee of a loan succeeds to the same rights and limitations as its assignor[.]" *Id.* at 177. Under prevailing principles of interpretation, the Court observed, "statutes are not construed to repeal the common law by implication." *Id.* at 177-78. The Court saw nothing in the legislative history expressing "any intention to change the common law rule on assignment of a loan, much less an intention that was 'plainly pronounced.'" *Id.* at 178. It added: "Given the ease and frequency with which loans are assigned—and have long been assigned in Maryland—it is very unlikely that the Legislature intended to change the common law so substantially without making such a purpose clear." *Id.*

The *Kemp* Court also considered the potential consequences of a proposed interpretation that would exclude assignees from the restrictions applicable to the original lender. *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 178-81. The Court perceived no "indication of a legislative purpose behind such [an exclusion]—for example, that the Legislature thought that borrowers of loans that had been assigned were in any less need of protection than borrowers whose loans remained with the original lending entity." *Id.* at 178. It reasoned that interpreting the statute to exclude assignees would substantially "narrow the scope of the Usury Law by inserting a gaping loophole in those provisions" that govern "post-origination conduct" of the lender. *Id.* In other words, an interpretation that would exempt assignees from the statutory obligations of the assignor

25

"would render the [statute] 'functionally toothless.'" *Id.* at 186-87 (quoting *Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, 2020 WL 1285504, at *7 (D. Md. Mar. 17, 2020) (unreported)).

For all of those reasons, the *Kemp* Court "interpret[ed] the term 'lender[,]'" as used in the provision prohibiting a lender from charging inspection fees, "to include an assignee who holds an outstanding loan" made under the Usury Law. *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 187. The Court reiterated: "The common law rule, long applied to assigned mortgages in Maryland, provides that, if the originator of a mortgage loan assigns the loan, the assignee succeeds to the same rights and obligations under the loan agreement as its assignor." *Id.* These obligations include not only the contractual obligations created by a loan agreement but also the obligations under a statute that governs the agreement and is made part of the agreement. *See id.* at 188 n.51. The Court concluded that this interpretation was consistent with the principles that courts should "harmonize statutory provisions when possible" and should "presume that the Legislature does not abrogate the common law without making that intention clear[.]" *Id.* at 187.

Previously, in *Kemp v. Nationstar Mortgage Ass'n*, 248 Md. App. 1, 19-28 (2020), *aff'd in part, rev'd in part on other grounds*, 476 Md. 149 (2021), this Court also interpreted the provision defining a lender as "a person who makes a loan subject to this subtitle" to include an assignee. This Court placed weight on a Revisor's Note that accompanied the legislation enacting the statutory definition. *Id.* at 21. The Revisor's Note stated that the purpose of that language was to indicate that the term "'relates only to a person who lends money under the provisions of this subtitle and not, for example,

26

under any other credit law.'" *Id.* at 21-22 (quoting Revisor's Notes to 1975 Md. Laws ch. 49). This Court reasoned that the purpose of that language "was not to differentiate between persons who 'make' loans and those who do not," but instead "to differentiate between loans made under [that subtitle] and those that were not." *Kemp v. Nationstar Mortgage Ass'n*, 248 Md. App. at 22.

The personal representative argues that, in light of *Kemp*, it would be an error to construe the licensing requirements of CL § 12-915 to be limited to the credit grantor that originates a revolving credit plan. In response, the substitute trustees and FirstKey agree that FirstKey satisfies the statutory definition of "credit grantor." They acknowledge that CL § 12-901(f)(2)(iii) "does, indeed, provide that assignees like FirstKey fall under the definition of 'credit grantor,' as noted by [the personal representative]." In other words, they appear to concede that FirstKey is a "person who acquire[d] or obtain[ed] the assignment of a revolving credit plan" made under the Credit Grantor Revolving Credit Provisions subtitle. CL § 12-901(f)(2)(iii). They do not argue that FirstKey qualifies for any of the express exemptions set forth in this subtitle or in the related provisions of the Financial Institutions Article.[12]

The substitute trustees and FirstKey nevertheless contend that these licensing requirements do not apply to a party that acquires or obtains the assignment of a revolving credit plan. They emphasize that the statute states that "[a] credit grantor

---

[12] Because the substitute trustees and FirstKey agree that FirstKey satisfies the statutory definition of "credit grantor," we do not consider whether an entity in FirstKey's position might not be a "credit grantor" within the meaning of the statute.

27

*making a loan or extension of credit under this subtitle*" is subject to the installment loan licensing provisions unless exempt under those provisions. CL § 12-915(a) (emphasis added). Similarly, the statute states that "a credit grantor *making a loan or extension of credit under this subtitle* secured by any lien on residential real property" is subject to the licensing provisions of the Maryland Mortgage Lender Law unless exempt under those provisions. CL § 12-915(b) (emphasis added).

According to the substitute trustees and FirstKey, this language should be interpreted to mean that the licensing requirement "applies only to a subset of credit grantors[,]" namely, those that make the initial loan or extension of credit. They assert: "Had the legislature wanted to require licenses for all credit grantors, including assignees, it would have left out the modifying language relating to making loans or extension of credit [under that subtitle], and just required it of all credit grantors absent express exemption." In short, they appear to argue that CL § 12-915 unambiguously expresses an intent to exclude assignees from the licensing requirement. In making this argument, they rely solely on the language used in this section. They do not purport to rely on any other tools of statutory interpretation, such as the context of the language within the statutory scheme, legislative history, or the consequences of adopting a proposed interpretation of the statute.

The argument that the phrase "credit grantor making a loan or extension of credit under this subtitle" (CL § 12-915) unambiguously excludes an assignee is strikingly similar to the arguments that the Court rejected in *Nationstar Mortgage LLC v. Kemp*, 476 Md. 149 (2021), and that this Court previously rejected in *Kemp v. Nationstar*

28

*Mortgage Ass'n*, 248 Md. App. 1 (2020). In their brief, the substitute trustees and FirstKey make no attempt to reconcile their position with the reasoning of *Kemp*. They do not address the Court's conclusion that the phrase "person who makes a loan under this subtitle" reasonably can be interpreted to include an assignee, where the statute imposes restrictions over the life of a loan. *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 172-74. Nor do they address the principle that statutes should not be construed to "change the common law rule on assignment of a loan" unless the intention to do so has been plainly expressed by the legislature. *Id.* at 178. In fact, nowhere in their brief do they even acknowledge *Kemp*.

We are unconvinced that the reference to "[a] credit grantor making a loan or extension of credit under this subtitle" (CL § 12-915(a)-(b)) clearly expresses an intent to limit the licensing requirement to an original credit grantor. One possible inference from that language is that the General Assembly sought to exclude assignees. Another possible inference is that the General Assembly included the language "not to differentiate between persons who 'make' loans and those who do not," but instead "to differentiate between loans made under [that subtitle] and those that were not." *Kemp v. Nationstar Mortgage Ass'n*, 248 Md. App. at 22. This second inference seems particularly plausible because, when creating this licensing requirement, the General Assembly needed to distinguish between the licensing obligations of a credit grantor under this subtitle and the licensing obligations of a credit grantor under the Credit Grantor Closed End Credit Provisions subtitle, enacted at the same time. The General Assembly also needed to distinguish between one licensing requirement related to loans

29

secured by a lien on residential real property and a different licensing requirement related to loans not secured by residential real property.[13]

Like the Usury Law examined in *Kemp*, the Credit Grantor Revolving Credit Provisions subtitle governs more than the origination of a loan. Among other things, this subtitle limits the interest and finance charges that a credit grantor may charge in connection with the revolving credit plan (CL § 12-903 to 12-905); authorizes the credit grantor to charge certain late or delinquency charges when a borrower fails to make payments (CL § 12-910); and, where the plan permits, authorizes the credit grantor to charge and collect attorneys' fees and collection costs resulting from a borrower's default (CL § 12-911). If the credit grantor has taken real property as security in connection with

---

[13] The language "making a loan or extension of credit under this subtitle" in CL § 12-915 was included in the original enactment of the Credit Grantor Revolving Credit Provisions subtitle. Upon examination of the original language, it is difficult to see any emphasis on a distinction between the originator of the loan and a subsequent assignee. This section provided, in pertinent part:

> (a) Except for a seller of goods or services not engaged in making cash advances to be paid to or for the account of a borrower offering extensions of credit by a secondary lien on residential real property, a credit grantor making a loan or extension of credit under this subtitle not secured by a secondary lien on residential real property is subject to the licensing, investigatory, enforcement and penalty provisions of Title 11, Subtitle 3 of the Financial Institutions Article.

> (b) In addition to the license required by subsection (a) of this section, a credit grantor making a loan or extension of credit under this subtitle secured by a secondary lien on residential real property is subject to the licensing, investigatory, enforcement and penalty provisions of Title 12, Subtitle 3 of the Financial Institutions Article.

1983 Md. Laws ch. 143, § 1.

the plan, the subtitle requires the credit grantor to record the entire line of credit when the plan is established (CL § 12-902(a)(2)) and to release any recorded security instrument within a reasonable time after the debt has been fully paid and the plan has terminated (CL § 12-924). These and other provisions impose various restrictions on a credit grantor throughout the life of a revolving credit plan.

If the interpretation proposed by the substitute trustees and FirstKey is correct, then all parties that obtain the assignment of a revolving credit plan would be excused from the licensing requirement. The substitute trustees and FirstKey have not suggested any purpose for creating such an exemption. An evident purpose of the licensing scheme is, however, to protect consumer borrowers from unscrupulous or unqualified actors, by requiring the credit grantor to establish its overall "fitness" to the satisfaction of the Commissioner of Financial Regulation. *See* Md. Code (1980, 2020 Repl. Vol.), § 11-205 of the Financial Institutions Article; *id.* § 11-506. The General Assembly is no doubt aware that loans and mortgages are frequently assigned from their original lenders to third parties. Thus, we see no obvious reason why the General Assembly would abandon all concern about the fitness of the credit grantor as soon as the plan is assigned. Excusing all assignees from the licensing requirement would render the licensing scheme largely ineffective as a means of ensuring that the party responsible for complying with the various consumer protection provisions of the statute has the requisite fitness to do so.

In our assessment, the language used in CL § 12-915(a) and (b) is "at best unclear" (*Nationstar Mortg. LLC v. Kemp*, 476 Md. at 174) as to whether the licensing requirement was intended to include an assignee. Interpreting this provision to apply

31

only to the original credit grantor would be inconsistent with the principle that an assignee "succeeds to the same rights and obligations under the loan agreement as its assignor[.]" *Id.* at 187. Here, as in *Kemp*, we discern no clear indication that the General Assembly intended to depart from the common law governing assignments of mortgages and mortgage loans when it enacted CL § 12-915.

Accordingly, we reject the contention that the licensing requirements of CL § 12-915 do not apply to a party that acquires or obtains the assignment of a revolving credit plan made under the Credit Grantor Revolving Credit Provisions subtitle.

As mentioned above, CL § 12-915(a) and (b) impose two, distinct licensing requirements. Subsection (a) makes certain credit grantors subject to licensing provisions concerning "installment loans." Subsection (b) makes certain credit grantors subject to the licensing provisions of the Maryland Mortgage Lender Law, where the loan or extension of credit is secured by a lien on residential property. In his motion to the circuit court (as well as in his appellate brief), the personal representative relied solely on the statutory obligation created by subsection (b): the obligation to obtain a license under the Maryland Mortgage Lender Law.

In their brief, the substitute trustees and FirstKey contend that, "*independent of* [the Credit Grantor Revolving Credit Provisions subtitle]," FirstKey would not be "required . . . to obtain a [Maryland Mortgage Lender Law] license." (Emphasis added.) They point out that the Maryland Mortgage Lender Law governs a "'[m]ortgage lender,'" a term that "means any person who: (i) [i]s a mortgage broker; (ii) [m]akes a mortgage loan to any person; or (iii) [i]s a mortgage servicer." Md. Code (1980, 2020 Repl. Vol.),

32

§ 11-501(k)(1) of the Financial Institutions Article. In their view, "FirstKey is none of those things." They argue, therefore, that the Maryland Mortgage Lender Law, standing alone, does not obligate FirstKey to obtain a mortgage lender license.

Contrary to their suggestion, however, the personal representative has not claimed that FirstKey is required, *independent* of the Credit Grantor Revolving Credit Provisions subtitle, to obtain a mortgage lender license. His licensing argument is founded entirely on the Credit Grantor Revolving Credit Provisions subtitle. Specifically, he relies on CL § 12-915 as the source of the licensing obligation. Under this provision, "a credit grantor making a loan or extension of credit under this subtitle secured by any lien on residential real property is subject to the licensing, investigatory, enforcement and penalty provisions of [the Maryland Mortgage Lender Law] unless the credit grantor or the loan or extension of credit is exempt under [the Maryland Mortgage Lender Law]." CL § 12-915(b). When analyzing whether FirstKey has a licensing obligation under this section, it makes little difference whether the Maryland Mortgage Lender Law also imposes an independent licensing requirement.

The substitute trustees and FirstKey nevertheless contend that FirstKey has no obligation to obtain a mortgage lender license because FirstKey is a foreign statutory trust, organized under the laws of Delaware. They broadly assert that the licensing requirements of the Maryland Mortgage Lender Law "do not apply" to any "foreign statutory trust." In support of that assertion, they cite a line of federal district court decisions concerning the Maryland Mortgage Lender Law.

In the first such opinion, *Suazo v. U.S. Bank Trust, N.A.*, 2019 WL 4673450, at *5-

33

10 (D. Md. Sept. 25, 2019) (unreported), the court concluded that a Delaware statutory trust owning defaulted mortgage loans initiated by other parties was not subject to the licensing requirements of the Maryland Mortgage Lender Law. The court reasoned that the trust did not satisfy the statutory definition of "mortgage lender" (a term that includes a "mortgage servicer") because the trust was "a passive entity that merely h[eld] title to mortgage loans." *Id.* at *8. The court reasoned that, because the "definition of 'mortgage lender'" did not specifically "include assignees[,]" the statute "d[id] not require assignees of mortgage loans to obtain a license." *Id.* at *9. Although the court recognized that the assignee of a mortgage loan acquires the same contractual rights of the assignor, the court reasoned that an assignee is not "subject[] . . . to the same rules and regulations" applicable to the assignor. *Id.* at *8. Using nearly identical reasoning, the court went on to conclude that the trust was not a "lender" within the meaning of the Maryland Usury Law and therefore not subject to provisions of that statute, prohibiting a lender from charging certain inspection fees. *Id.* at *10. In subsequent opinions, including one reported opinion, the United States District Court for the District of Maryland has repeated the analysis from the *Suazo* opinion. *Sharma v. Rushmore Loan Mgmt. Servs., LLC*, 611 F. Supp. 3d 63, 78-80 (D. Md. 2020); *Robinson v. Fay Servicing, LLC*, 2019 WL 4735431, at *4 (D. Md. Sept. 27, 2019).

The *Suazo* line of cases has no direct application to the issues presented in this appeal. Those cases do not concern revolving credit plans or the licensing requirements of the Credit Grantor Revolving Credit Provisions subtitle. In each of those cases, the courts analyzed whether the Maryland Mortgage Lender Law, standing alone, imposed a

34

licensing obligation on a trust that had acquired a mortgage loan. The conclusion that a trust merely owning a defaulted mortgage loan is not a "mortgage lender" within the meaning of that statute does not answer the question of whether a trust might be subject to the licensing requirements imposed on a "credit grantor" by a different statute. This line of cases, therefore, is inapposite.

In any event, even purely in the context of construing the Maryland Mortgage Lender Law, the persuasive value of this line of opinions is suspect. The *Suazo* court's rationale for concluding that the Maryland Mortgage Lender Law does not apply to assignees is in substantial conflict with the reasoning of *Nationstar Mortgage LLC v. Kemp*, 476 Md. 149 (2021), decided a few years after *Suazo*. In *Kemp*, this State's highest court specifically disavowed *Suazo* and other opinions that have followed its analysis. The Court explained that "[t]he court in *Suazo* and the related cases did not consider[,]" among other things, "the Maryland common law concerning assignment of mortgages" or the potential consequences of an interpretation that would exempt assignees from restrictions applicable to the lender. *Nationstar Mortgage LLC v. Kemp*, 476 Md. at 186 n.48. "Accordingly," the Court "d[id] not find *Suazo* or the cases that repeated its analysis to be persuasive." *Id.* [14] Because the rationale of the *Suazo* line of

---

[14] The Court was even more emphatic in rejecting statements from one opinion following *Suazo*, in which the court "stated that an assignee does not 'inherit the *statutory* obligations of the original lender, when such laws regulate the initial maker of the loan regardless of any contractual terms to the contrary.'" *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 188 n.51 (quoting *Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, 2020 WL 1285504, at *6 (D. Md. Mar. 17, 2020) (unreported)) (emphasis in *Flournoy*). The Court stated that this conclusion "would appear to open up the possibility that a lender could launder a loan agreement of unwanted statutory provisions incorporated in the agreement

35

cases does not comport with controlling Maryland precedent, there is no reason for this Court to extend that disavowed rationale to a new statute.

In addition to the *Suazo* line of cases, the substitute trustees and FirstKey cite *Blackstone v. Sharma*, 461 Md. 87 (2018). They suggest, without any elaboration, that this authority supports the proposition that the licensing requirements of the Maryland Mortgage Lender Law "do not apply" to a foreign statutory trust. The *Blackstone v. Sharma* opinion does not support that proposition.

In *Blackstone v. Sharma*, 461 Md. at 95, the Court considered the "limited legal issue" of whether "a foreign statutory trust, as owner of a delinquent mortgage loan," was required "to obtain a license as a collection agency" under the Maryland Collection Agency Licensing Act (MCALA) "before substitute trustees instituted a foreclosure action against a homeowner who defaulted on [the] mortgage." Undertaking a thorough review of the text and legislative history of amendments to MCALA (*id.* at 114-35), the Court reasoned that the General Assembly "did not intend to regulate or license . . . mortgage industry actors, including foreign statutory trusts serving as a repository for mortgage loans, as collection agencies" under MCALA. *Id.* at 135. According to the Court, the General Assembly had "consciously separated the consumer debt collection agency industry under MCALA from the mortgage industry." *Id.* at 140. The Court concluded that "foreign statutory trusts are outside of the scope of the collection agency industry regulated and licensed under MCALA." *Id.* at 147.

---

. . . simply by assigning the loan." *Nationstar Mortg. LLC v. Kemp*, 476 Md. at 188 n.51. "That is not Maryland law." *Id.* (citing *Post v. Bregman*, 349 Md. 142, 156 (1998)).

36

We see no justification for the suggestion that *Blackstone v. Sharma* should be read expansively. The Court explained that its opinion was "limited" (*Blackstone v. Sharma*, 461 Md. at 95) to the question of whether a trust must obtain a collection agency license under MCALA. The Court addressed that question by examining the text of MCALA (*id.* at 114-20), the legislative history of MCALA (*id.* at 120-35), and the relationship between MCALA and subsequent enactments (*id.* at 135-44). The Court's core conclusion was that the General Assembly did not intend for MCALA to regulate actors in the mortgage industry, including foreign statutory trusts. This analysis is inapplicable to the Credit Grantor Revolving Credit Provisions subtitle. Unlike MCALA, this subtitle is not narrowly targeted at collection agencies. This subtitle specifically "addresses revolving loan credit secured by residential mortgages." *Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 197 (1992). The primary function of CL § 12-915(b) is to make certain mortgage industry actors subject to the licensing requirements of the Maryland Mortgage Lender Law in connection with mortgages securing a revolving line of credit. It cannot be said that the General Assembly "did not intend to regulate or license . . . mortgage industry actors" (*Blackstone v. Sharma*, 461 Md. at 135) when it enacted these provisions.

Accordingly, we reject the two contentions raised by the substitute trustees and FirstKey concerning CL § 12-915. They have contended: (1) that this section does not apply to a party that acquires or obtains the assignment of a revolving credit plan; and (2) that this section does not apply to a foreign statutory trust. We see no valid support for these contentions.

37

In his brief, the personal representative argues that, unless FirstKey obtains a license in accordance with CL § 12-915, FirstKey has no right to foreclose under the deed of trust. The personal representative does not cite any statutory provision that prohibits an unlicensed party from pursuing a foreclosure. Instead, the personal representative invokes the principle that courts will not permit an unlicensed party to enforce a contract if the performance of the contract depends on the issuance of a license and if the licensing statute is regulatory in nature and for the protection of the public. *See McDaniel v. Baranowski*, 419 Md. 560, 583 (2011). The personal representative asserts that the purpose of the licensing requirement of the Credit Grantor Revolving Credit Provisions subtitle is to protect consumer borrowers. *Cf. Bolling v. Bay Country Consumer Fin., Inc.*, 251 Md. App. 575, 608-10 (2021) (recognizing that certain provisions of the Credit Grantor Closed End Credit Provisions subtitle, the counterpart to the Credit Grantor Revolving Credit Provisions subtitle, are remedial in nature and designed to protect consumer borrowers).

The substitute trustees and FirstKey have not disputed the assertion that a credit grantor has no right to foreclose if the credit grantor has failed to obtain a license required by the Credit Grantor Closed End Credit Provisions subtitle. In the circuit court and in this appeal, they have merely argued that FirstKey is not subject to the licensing requirement. The only arguments made in support of their position are unpersuasive.[15]

---

[15] Under the circumstances, we need not decide whether the personal representative is correct in asserting that a credit grantor has no right to foreclose if the credit grantor fails to obtain a license required by the Credit Grantor Revolving Credit Provisions subtitle. His adversaries did not contest that assertion, either in the circuit

The personal representative also disputes whether FirstKey has the right to collect all sums that it seeks to recover in this foreclosure action. The personal representative asserts that he has notified FirstKey of its "violation[]" of the Credit Grantor Revolving Credit Provisions subtitle—i.e., its failure to obtain a license—and that FirstKey has failed to "cure" that violation. The personal representative theorizes that, as a consequence, FirstKey may "collect only the principal amount of credit extended and may not collect any interest, costs, fees, or other charges[.]" CL § 12-918(a)(2). The personal representative notes that, in this foreclosure action, FirstKey sought to collect $180,504.29, a total that "includes" interest and fees.

For the purpose of this appeal, it is unnecessary to decide whether FirstKey may have the right to collect the full amount claimed. Even if the statement of indebtedness is inaccurate, this purported inaccuracy, without more, would not be a basis to enjoin or dismiss a foreclosure sale. *See Greenbriar Condo., Phase I Council of Unit Owners, Inc. v. Brooks*, 387 Md. 683, 732-34 (2005). The theory that FirstKey may collect only the principal amount is not a defense as to "the validity of the lien or the lien instrument or to the right of [FirstKey] to foreclose[.]" Md. Rule 14-211(b)(1)(C). Thus, the issue of the amount of indebtedness is not before this Court in this appeal from the order denying the motion to stay or dismiss the foreclosure action.

In summary, given their concession that FirstKey is a "credit grantor" under CL § 12-901(f)(2)(iii), the substitute trustees and FirstKey have offered no valid reason to

court or in this appeal. The circuit court made its decision based on the arguments made by the parties.

conclude that the licensing requirement of CL § 12-915 does not apply to FirstKey. The circuit court erred when it credited their arguments that FirstKey is not subject to this licensing requirement, either because FirstKey is an assignee or because FirstKey is a foreign statutory trust. The order denying the personal representative's motion cannot be affirmed.

The failure to obtain a required license is not necessarily a permanent impediment to a foreclosure action. In fact, the personal representative mentions that FirstKey might "cure" its noncompliance with CL § 12-915, but he complains that FirstKey has not yet done so. In other cases, where a trial court has concluded that a party cannot foreclose because it lacks a required license, the trial court has dismissed the foreclosure action without prejudice. *See Blackstone v. Sharma*, 461 Md. at 97-98. The present case encompasses not only a foreclosure proceeding but also counterclaims raised against the parties seeking to foreclose. When this case returns to the circuit court, the court will need to exercise its discretion in deciding how to proceed in a manner consistent with the rights of all parties to the case.

In the interest of providing completeness and avoiding the expense and delay of another appeal, we will address the remaining issues raised in this appeal. We conclude that, with the exception of the licensing argument, the personal representative's motion failed to raise a valid defense to the foreclosure action.

## II.     Effect of the Rule of Merger on the Deed of Trust

In his most prominent challenge to the judgment, the personal representative invokes the rule of merger. The personal representative contends that, when U.S. Bank

obtained a personal judgment against Mr. Brown in the action for breach of the home equity line of credit agreement and promissory note, the deed of trust merged into that judgment. According to the personal representative, therefore, the deed of trust can no longer be enforced in an action to foreclose the lien on the Brown property.

The rule of merger is one aspect of the doctrine of res judicata, or claim preclusion. *See, e.g.*, *Monarc Constr., Inc. v. Aris Corp.*, 188 Md. App. 377, 388 (2009). In general, "'under the rule of merger, a simple contract is merged in a judgment or decree rendered upon it, and . . . all its powers to sustain rights and enforce liabilities [are] terminated" in the judgment or decree. *SunTrust Bank v. Goldman*, 201 Md. App. 390, 402 (2011) (quoting *AccuBid Excavation, Inc. v. Kennedy Contractors, Inc.*, 188 Md. App. 214, 233 (2009)) (further quotation marks omitted). Under this rule: "'When a valid and final personal judgment is rendered in favor of the plaintiff[,] . . . [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although [the plaintiff] may be able to maintain an action upon the judgment[.]'" *Accubid Excavation, Inc. v. Kennedy Contractors, Inc.*, 188 Md. App. at 232 (quoting Restatement (Second) of Judgments § 18 (1982)). For example, when a plaintiff obtains a judgment based on a defendant's default under a loan agreement, the plaintiff ordinarily cannot bring a subsequent suit to recover attorneys' fees under the same loan agreement. *See Monarc Constr., Inc. v. Aris Corp.*, 188 Md. App. at 395-97.

In this appeal, the personal representative does not deny that "the right to foreclose under a deed of trust once may have existed prior to the entry" of a judgment on what he calls "the subject contracts." The personal representative contends that the "underlying

41

mortgage contracts" merged into the prior judgment entered in 2014 against Mr. Brown in favor of U.S. Bank. According to the personal representative, both "the note and the deed of trust . . . merged into that judgment[.]" The personal representative argues that, as a consequence, these two contracts "are no longer . . . enforceable."

As the substitute trustees and FirstKey correctly point out, this merger argument is founded on an erroneous premise. The personal representative theorizes that obtaining a judgment on the *promissory note* bars any subsequent attempts to seek relief pursuant to the *deed of trust*. This argument incorrectly treats two separate contracts—(1) the promissory note, the relevant debt instrument; and (2) the deed of trust, the relevant security instrument—as if they were a single contract. They are not. In these circumstances, the promissory note and the deed of trust "are separate, enforceable contracts." *Wellington Co., Inc. Profit Sharing Plan & Trust v. Shakiba*, 180 Md. App. 576, 592 (2008). "The covenant to pay" in the deed of trust "is enforceable independently as a contract, even if the same obligation is also recited in a promissory note[.]" *Id.* at 601. Although creditors are not entitled to "recover twice" for a single debt, creditors may be "entitled to seek repayment under either" the note or the deed of trust. *Id*. at 592.

In their brief, the substitute trustees and FirstKey contend that "pursuing *in personam* relief on the note" and "[o]btaining a money judgment" against the borrower does not preclude a creditor from "pursuing separate *in rem* relief" under a deed of trust. In support, they cite *Hand v. Manufacturers & Traders Trust Co.*, 405 Md. 375 (2008), in which the Court discussed the distinction between suing to recover on a promissory note

42

and bringing a foreclosure action to enforce a separate deed of trust.

Under the facts of that case, the guardian of the property of a ward, in her capacity as guardian, had executed both a "bill obligatory (promissory note)" and a deed of trust securing the debt with real property owned by the ward. *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 381. After the guardian defaulted, the note-holder brought suit against the guardian and a successor guardian, seeking to collect on the promissory note. *Id.* at 382. Although the note-holder initially sought an order declaring that it had the authority to foreclose pursuant to the deed of trust, the trial court did not decide that issue, because the parties reached an agreement to sell the property and to distribute the proceeds with the court's authorization. *Id.* at 383 & n.9. The note-holder ultimately prevailed in the action against the guardian and the successor guardian to recover under the promissory note. *Id.* at 383.

Challenging the judgment on the promissory note, the successor guardian made various arguments about the enforceability of the deed of trust. *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 384. Addressing these arguments, the Court stated that the "deed of trust [was] no longer at issue" because the successor guardian "ha[d] sold the property[] and the deed of trust ha[d] been released." *Id.* at 384-85. The Court explained: "Generally, bills obligatory which are secured by mortgages or deeds of trust are separate instruments and can be proceeded on separately." *Id.* at 385. The Court observed that, where a deficiency remains after a foreclosure action, the holder of the promissory note may proceed "'in a separate action at law to obtain judgment for the balance due and owing on the note, together with interest, after a proper credit ha[s] been

43

given on the notes of the proceeds realized from the foreclosure proceedings.'" *Id.* at 385

(quoting *Katz v. Simcha Co., Inc.*, 251 Md. 227, 238 (1968)). The Court added: "'The

important thing is, there can be only one satisfaction of the obligation.'" *Hand v. Mfrs. &*

*Traders Trust Co.*, 405 Md. at 385 (quoting *Katz v. Simcha Co., Inc.*, 251 Md. at 238).

> The Court quoted an earlier opinion in which it had explained:
>
> "'A creditor whose demand is evidenced by the debtor's personal
> obligation, which is secured by a mortgage upon land, has the choice of
> foreclosing the mortgage upon the breach of the condition thereof, or of
> proceeding against the debtor without regard to the mortgage security. If
> either of the two resources may be exhausted without satisfying the
> demand, resort may be had to the other. Until the demand is satisfied, the
> creditor may seek at the same time, but by separate and independent
> proceedings, both the enforcement of the personal liability of the debtor,
> and the foreclosure of the mortgage security.'"

*Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 386 (quoting *American Nat'l Bank of*

*Maryland v. Mackey*, 247 Md. 319, 324 (1967) (quoting with approval *Tompkins v.*

*Drennan*, 10 So. 638, 639 (Ala. 1892))).

The Court concluded that the prior sale of the real property and release of the deed

of trust presented no "impediment" to the action "to enforce the repayment of the

promissory note[.]" *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 387. "[I]n

Maryland," the Court wrote, "a promissory note obligation can be proceeded on even

though the collateral security, i.e., mortgage or deed of trust[,] has been, or is in the

process of being, foreclosed upon, so long as the total recovery, i.e., what was paid to the

creditor during the sale aforesaid and what is recovered under the action to enforce the

promissory note, does not exceed the total sum due the creditor." *Id.*

In his appellate brief, the personal representative calls attention to factual

44

differences between the *Hand* case and the present case.  Most notably, *Hand* did not arise from a foreclosure action; it arose from an action to collect on a promissory note. We agree that the facts of the present case are different from those of the *Hand* case. Nevertheless, many of the legal principles discussed in the *Hand* opinion are instructive here.

The *Hand* opinion explains that, under Maryland law, a promissory note and a deed of trust securing the debt owed under the promissory note "are separate instruments and can be proceeded on separately."  *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 385.  Specifically, where a deed of trust secures the debt owed under a promissory note, a creditor "'has the choice of foreclosing'" pursuant to the deed of trust "'or of proceeding against the debtor'" personally on the promissory note.  *Id.* at 386 (quoting *American Nat'l Bank of Maryland v. Mackey*, 247 Md. at 324).  Of particular importance: "'If either of the two resources may be exhausted without satisfying the demand, resort may be had to the other.'"  *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 386 (quoting *American Nat'l Bank of Maryland v. Mackey*, 247 Md. at 324).

In this appeal, the personal representative advances the position that, once a creditor successfully pursues an action against a borrower on a promissory note, the creditor may no longer resort to a foreclosure proceeding pursuant to a deed of trust, even if the debt remains unsatisfied.  This position cannot be reconciled with the principles discussed in the *Hand* opinion.  In accordance with *Hand*, Mr. Brown's creditors, upon his default, had the option either to pursue an action to foreclose the lien on the Brown property or to pursue an action at law against Mr. Brown personally to recover on the

45

promissory note. U.S. Bank, as a successor to the creditor, elected to bring an action at law against Mr. Brown to recover on the promissory note. In 2014, U.S. Bank obtained a personal judgment against Mr. Brown in the amount of $88,500.00. Despite this judgment, no part of the demand for payment has ever been satisfied. Because this first effort to obtain payment by suing to recover on the promissory note has been "exhausted without satisfying the demand, resort may be had" to the second option: foreclosure pursuant to the deed of trust. *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 385.

As the substitute trustees and FirstKey have explained in their brief, courts outside Maryland, by an overwhelming consensus, hold that a creditor may bring a foreclosure action under a deed of trust even after obtaining a personal judgment against the borrower under a promissory note. These courts have concluded that, absent a statute to the contrary, creditors may seek monetary relief under a promissory note and may pursue a foreclosure under a deed of trust, consecutively, regardless of which remedy they pursue first. *See* 55 American Jurisprudence 2d Mortgages § 435 (Oct. 2023 update); 59 C.J.S. Mortgages § 662 (Aug. 2023 update). As summarized in the Restatement (Third) of Property: Mortgages § 8.2 (1997):

> When an obligation secured by a mortgage becomes due, the mortgagee may either: (a) obtain a judgment against any person who is personally liable on the obligation and, to the extent that the judgment is not satisfied, foreclose the mortgage on the real estate for the balance; or (b) foreclose the mortgage and, to the extent that the proceeds of the foreclosure sale do not satisfy the obligation, obtain a judgment for the deficiency against any person who is personally liable on the obligation[.]

Under this "traditional common-law approach," the mortgagee has "the choice to proceed initially on the underlying personal obligation or to foreclose on the mortgaged

46

real estate." Restatement (Third) of Property: Mortgages § 8.2, cmt. a. If the mortgagee chooses to proceed initially on the personal obligation, the mortgagee "may first obtain a judgment on the personal obligation and later foreclose on the mortgaged real estate for any part of the judgment that is not satisfied from [the] mortgagor's other property." *Id*.; *see also* Restatement (Second) of Judgments § 18 (1982) (stating that "if a creditor has a lien upon property of the debtor and obtains a judgment against [the debtor], the creditor does not thereby lose the benefit of the lien"). In our assessment, this approach is consistent with the statements from *Hand v. Manufacturers & Traders Trust Co.*, 405 Md. at 385, and *American National Bank of Maryland v. Mackey*, 247 Md. at 324-25.

As explained by the substitute trustees and FirstKey, other courts have repeatedly held that a deed of trust *does not* merge into a judgment entered in an action to recover on the promissory note. *In re Dubak*, 330 B.R. 337, 339 (Bankr. D.R.I. 2005) (holding, under Rhode Island law, that "a mortgagee who has obtained a judgment on the mortgage note does not forgo his rights under the mortgage until the debt is satisfied") (quotation marks omitted); *In re Bache-Wiig*, 299 B.R. 245, 248-49 (Bankr. D. Me. 2003) (same holding under Maine law); *In re Mitchell*, 281 B.R. 90, 92 (Bankr. S.D. Ala. 2001) (holding, under Alabama law, that "until the mortgage debt is actually satisfied, the recovery of a judgment on the obligation secured by a mortgage without the foreclosure of the mortgage has no effect upon the mortgage or its lien"); *In re Gayle*, 189 B.R. 914, 919-21 (Bankr. S.D. Tex. 1995) (holding, under Texas law, that "a lien securing a debt which becomes merged in a judgment is not affected by such merger"); *Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d 742, 746-48 (Ct. App. Tex. 2010) (following the "longstanding

rule" that "suit may be maintained on a note secured by lien without enforcement of the lien, and after judgment another suit can be brought to foreclose the lien") (further citation and quotation marks omitted); *Bank of Sun Prairie v. Marshall Dev. Co.*, 626 N.W.2d 319, 322-25 (Ct. App. Wis. 2001) (following the "general rule" that "[a]llow[s] an action to foreclose on a mortgage securing a debt that has been reduced to a judgment").

Except where a statute requires otherwise, "'[t]he cases are uniform in holding that until the mortgage debt is actually satisfied, the recovery of a judgment on the obligation secured by a mortgage, without the foreclosure of the mortgage, . . . does not merge it, and does not preclude its foreclosure in a subsequent suit instituted for that purpose, or the exercise of the power of sale contained in the mortgage or deed of trust[.]'" *Bank of Sun Prairie v. Marshall Dev. Co.*, 626 N.W.2d at 323 (quoting 55 American Jurisprudence 2d Mortgages § 524 (1996)); *accord In re Bache-Wiig*, 299 B.R. at 249; *In re Gayle*, 189 B.R. at 918. Under this prevailing approach, because "[t]he mortgage does not merge" with a "judgment on the obligation secured by the mortgage," "the creditor is not prohibited from foreclosing or exercising the power of sale contained in the mortgage" after obtaining a judgment on the underlying debt instrument, at least where the judgment "remains uncollected[.]" *In re Mitchell*, 281 B.R. at 92.

This conclusion follows from a straightforward application of the rule of merger where there are two, distinct contracts. Where "a debt is memorialized by a note that is secured by a lien, the note and lien constitute separate obligations[,]" which "may be litigated in separate lawsuits." *Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d at 747. When a

48

creditor obtains a judgment on a promissory note, the creditor's "claim on the note merge[s] with that judgment, thereby precluding the [creditor] from bringing another action to recover on the note." *Bank of Sun Prairie v. Marshall Dev. Co.*, 626 N.W.2d at 322. If the creditor obtains a judgment on the note alone, "'the debt is not destroyed by the merger and . . . the mortgage secures the debt in its new form as merged in the judgment.'" *In re Bache-Wiig*, 299 B.R. at 249 (quoting 55 American Jurisprudence 2d Mortgages § 524). Thus, the merger of claims under the note does not "preclude[] a later lawsuit to foreclose on a mortgage securing the same debt[.]" *Bank of Sun Prairie v. Marshall Dev. Co.*, 626 N.W.2d at 322.

In some states, legislatures have enacted statutes departing from this "traditional and majority position" in favor of a "'one action' rule[.]" Restatement (Third) of Property: Mortgages § 8.2, Reporter's Note, cmt. a (discussing statutes enacted in California, Idaho, Montana, Nevada, New Jersey, North Dakota, and Utah). This type of statute typically states that, upon the default of a loan obligation secured by a lien on real property, the sole remedy is to bring a foreclosure action and to pursue any claim for a remaining post-sale deficiency in that proceeding. *Id.* The personal representative has cited no statute establishing any form of "one action" rule in this State. Accordingly, we have every reason to conclude that Maryland courts should adhere to the approach that prevails in the states that lack this type of statute.

In his brief, the personal representative observes that parties to a contract may "avoid the implications of the merger doctrine" by stating clearly in the contract their intent that a contractual right will survive a final judgment on the underlying contract.

*See generally SunTrust Bank v. Goldman*, 201 Md. App. at 404-06. The personal representative notes that neither the promissory note nor the deed of trust "contain express language stating that the parties intend that the right to foreclose under the deed of trust shall not merge into a judgment" on one of those contracts. On that basis, the personal representative argues that the judgment on the promissory note extinguished any right to foreclose under the deed of trust. The personal representative's argument is mistaken. It makes no difference here whether the instruments included provisions to avoid the effect of the rule of merger, because, under the rule of merger, a deed of trust *does not* merge into a judgment entered on the promissory note. No contractual provision is needed to avoid a merger that does not even occur under the rule of merger.

In addition to relying on the rule of merger, the personal representative alludes to the doctrine of election of remedies. *See generally Surratts Assocs. v. Prince George's County*, 286 Md. 555, 567-68 (1979). The personal representative asserts that, "once there is an election of one remedy but not another," this election precludes a "duplicative action[]" for the remedy that was not pursued in the first action. The doctrine of election of remedies, however, applies only where two remedies are inconsistent, not where the two remedies are cumulative. *See Walter v. Atl. Builders Grp., Inc.*, 180 Md. App. 347, 364-65 (2008). Other courts have held that the "two remedies" of "su[ing] on a note" and "pursuing the security by way of foreclosure" are "independent and do not conflict with one another." *Szego v. Kingsley Anyanwutaku*, 651 A.2d 315, 317 (D.C. 1994). Thus, "bringing both of them does not trigger the application of the election of remedies doctrine." *Id.*; *accord In re Mitchell*, 281 B.R. at 92 (stating that "[m]erely obtaining a

50

judgment" on a promissory note, "when [the] judgment remains uncollected[,]" does not "give rise to the bar of election of remedies") (citing *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1081 (5th Cir. 1984)); *In re Bache-Wiig*, 299 B.R. at 249. "The policy served by allowing a mortgagee to . . . foreclose on its lien after an unsatisfied judgment on the note is to allow the mortgagee to seek cumulative, consistent remedies until the debt is paid." *In re Gayle*, 189 B.R. at 921.

The personal representative also invokes the policy against "claim splitting." The personal representative quotes the proposition that "rights cannot be enforced in a piecemeal fashion, that a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof." *Levin v. Friedman*, 271 Md. 438, 445 (1974). As explained above, an action to recover damages on a promissory note and an action to foreclose under a separate deed of trust are not mere parts of the same cause of action. To the contrary, under Maryland law, a promissory note and a deed of trust are separate instruments that may be litigated through separate suits. *See Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 385-86; *Wellington Co., Inc. Profit Sharing Plan & Trust v. Shakiba*, 180 Md. App. at 592. "Until the demand is satisfied," Mr. Brown's creditors "may seek at the same time, but by separate and independent proceedings, both the enforcement of the personal liability of the debtor, and the foreclosure of the mortgage security." *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. at 386 (quotation marks omitted). Moreover, contrary to the personal representative's assertions, this foreclosure action presents no risk of a "double recovery." On the undisputed facts, no creditor has received a single satisfaction of the underlying debt.

51

In the present appeal, the personal representative has offered no basis to conclude that Maryland law is incompatible with the traditional approach to the remedies available to a creditor under a promissory note and under a separate deed of trust. Accordingly, we conclude that claims under the deed of trust did not merge into the judgment entered on the promissory note. The circuit court was correct to reject the theory that the rule of merger precluded a foreclosure action pursuant to the deed of trust.

### III.     Absence of an Assignment of the Prior Judgment

The next issue raised in this appeal also relates to the prior judgment entered in 2014 against Mr. Brown. The personal representative contends that FirstKey has no right to foreclose where a "different party," U.S. Bank, previously obtained a judgment in its favor to collect on the promissory note and where that judgment "has never been assigned" to FirstKey.

The personal representative asserts that FirstKey's claimed right to foreclose is based on its purported ownership of the deed of trust securing the debt owed under the promissory note. He observes that, in 2014, a judgment was entered in an action on the promissory note in favor of U.S. Bank, not in favor of FirstKey. He argues that, under the rule of merger, claims based on Mr. Brown's contractual obligations under the promissory note have merged into the money judgment in favor of U.S. Bank.

The personal representative contends that only the judgment creditor, U.S. Bank, "has the right to enforce" the judgment unless it is "properly assigned" to another party. The personal representative argues that "strangers" to the judgment, such as FirstKey, "have no rights to enforce" that judgment "directly or indirectly without a proper

52

assignment" of that judgment.  The personal representative notes that Maryland Rule 2-624 prescribes the procedure under which a judgment may be "assigned in writing by the judgment holder" and "filed in the court where the judgment was entered and in any court where it has been recorded."  According to the personal representative, because FirstKey has never obtained or filed such an assignment, FirstKey has no right to bring a foreclosure action in which it seeks to recover a debt that is now embodied in the judgment in favor of U.S. Bank.

As their primary response to this argument, the substitute trustees and FirstKey contend that the personal representative "did not raise in the trial court [his] argument that FirstKey [needed] to obtain an assignment of the prior judgment" in order to establish the right to foreclose.  They argue that "the 'assignment of the judgment' argument" has been "waived" and is not properly before this Court.[16]

The preservation question is a close one, but we conclude that this issue does not "plainly appear[] by the record to have been raised in or decided by the trial court[.]" Md. Rule 8-131(a).  Thus, this issue is not properly preserved.  *See Anderson v. Burson*, 424 Md. 232, 243 (2011) (holding, in appeal from denial of motion to stay foreclosure sale, that homeowners failed to preserve issue of whether mortgage note had been property transferred to foreclosure plaintiff, where homeowners failed to raise that issue in the circuit court); *Granados v. Nadel*, 220 Md. App. 482, 498-99 (2014) (holding, in

---

[16] In his reply brief, the personal representative reiterated his contention that FirstKey has no right to foreclose "without a written assignment" of the prior judgment. The reply brief did not refute his adversaries' contention that this issue was not preserved.

appeal from ratification of foreclosure sale, that lender failed to preserve issue of whether borrower had standing to appeal, where lender gave only a "cursory treatment of the issue[]" in the circuit court).

Although his appellate brief repeatedly asserts that the prior judgment "has never been assigned" to FirstKey, the personal representative cites no part of the record in which he made that assertion in support of his motion to stay or dismiss the foreclosure action. Within his discussion of this issue, he cites a page from the record extract, which reproduces his counterclaims against FirstKey and the substitute trustees. One sentence of that pleading states: "It is unfair for FirstKey and [the substitute trustees] to claim a right to collect on a judgment that has not even been assigned to FirstKey." By contrast, the personal representative failed to make a similar factual assertion, much less a meaningfully developed argument about the potential implications of that assertion, in his motion to stay or dismiss the foreclosure action.

A review of the entire text of the motion to the circuit court shows that the personal representative did not raise the issue of whether FirstKey lacked the right to foreclose because FirstKey lacked an assignment of the prior judgment. The motion repeatedly mentioned that the prior judgment was entered in favor of U.S. Bank, rather than FirstKey. The motion employed that fact as a supporting detail in service of an argument that *the deed of trust* had merged into the judgment. (As we have explained in Part II of this Discussion, that merger argument was incorrect.) The motion advanced the position that "there [was] no enforceable deed of trust and related note" to foreclose upon, because "the note and its related deed of trust [had] merged into" the prior

54

judgment. The motion did not discuss a possible alternative position that, even if the deed of trust remained enforceable after the entry of judgment on the promissory note, only the judgment creditor (or its assignee) would have the right to foreclose.

The contentions raised in the motion and in this appeal "are by no means the same[.]" *James B. Nutter & Co. v. Black*, 225 Md. App. 1, 26 (2015) (declining to decide appellate argument where appellant raised one theory in trial court and attempted to raise an alternative theory on appeal). A party moving to stay or dismiss a foreclosure action must "state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action[.]" Md. Rule 14-211(a)(3)(B); *see also* Md. Rule 2-311(c) (providing that a written motion must "state with particularity the grounds and the authorities in support of each ground"). When deciding a motion, "'[t]he trial court is not required to imagine all reasonable offshoots of the argument[s] actually presented'" in support of or in opposition to the motion. *James B. Nutter & Co. v. Black*, 225 Md. App. at 27 (quoting *Starr v. State*, 405 Md. 293, 298-99 (2008)). The appellate argument concerning FirstKey's failure to obtain an assignment of the prior judgment is beyond the fair scope of the merger argument previously raised in the motion to stay or dismiss the foreclosure action. The circuit court here had no occasion to decide an issue that was not raised by the motion.

Even if the personal representative had preserved this issue for our review, we would reject his contention that FirstKey lacks the right to foreclose in the absence of an assignment of the prior judgment. We do not doubt that an assignment of the judgment

entered in the action on the promissory note is one method by which a party might have acquired ownership of the relevant debt. Here, FirstKey used a different method to establish conclusive proof of its ownership of the debt. The method that FirstKey used is authorized by a Maryland statute.

Both in the circuit court and in this appeal, the substitute trustees and FirstKey have relied on section 7-103 of the Real Property Article. That statute specifically governs the effect of recording title to a deed of trust. It provides: "The title to any promissory note, other instrument, or debt secured by a mortgage, both before and after the maturity of the note, other instrument, or debt, conclusively is presumed to be vested in the person holding the record title to the mortgage." Md. Code (1974, 2015 Repl. Vol.), § 7-103(a) of the Real Property Article ("RP").

On October 4, 2022, FirstKey obtained a written assignment of the deed of trust securing the debt owed by the late Mr. Brown. In that assignment, "Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for GN Mortgage, LLC, its successors and assigns" assigned "all of [its] interest" in the deed of trust to FirstKey. Those parties subsequently recorded the assignment in the land records for Baltimore County.

When FirstKey obtained an assignment of the deed of trust, FirstKey gained ownership of the deed of trust. When FirstKey recorded the written assignment, FirstKey gained something more. By recording the assignment, FirstKey established "record title" to the deed of trust under RP § 7-103(a). By operation of this statute, FirstKey became entitled to a "conclusive[] . . . presum[ption]" that "[t]he title to any promissory note,

56

other instrument, or debt secured by" the deed of trust was "vested in" FirstKey. *Id.*

When interpreting a statute, courts must "'read the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Lyles v. Santander Consumer USA Inc.*, 478 Md. 588, 602 (2022) (quoting *United Bank v. Buckingham*, 472 Md. 407, 423 (2021)) (further citation and quotation marks omitted). Moreover, the use of "the modifier 'any' unrestricted by qualifiers" in a statute usually "connotes a broad and expansive meaning which is commonly understood to mean '[o]ne, some, every, or all without specification.'" *Maryland Econ. Dev. Corp. v. Montgomery County*, 431 Md. 189, 203 (2013) (quoting American Heritage Dictionary of the English Language 81 (4th ed. 2006)). Thus, the phrase "any promissory note, other instrument, or debt secured by" the deed of trust (RP § 7-103(a)) should not be read narrowly.

As discussed earlier in this opinion, after a personal judgment is entered on a promissory note that is secured by a separate deed of trust, the deed of trust "secures the debt in its new form as merged in the judgment." *In re Bache-Wiig*, 299 B.R. 245, 249 (D. Me. 2003) (quoting 55 American Jurisprudence 2d Mortgages § 524); *see Bank of Sun Prairie v. Marshall Dev. Co.*, 626 N.W.2d 319, 323 (Ct. App. Wis. 2001) (same). We see no reason why the types of "debt[s] . . . secured by a deed of trust" (RP § 7-103(a)) should not include the debt owed under a judgment entered against the borrower in an action on a promissory note. By operation of RP § 7-103(a), therefore, FirstKey is entitled to a conclusive presumption that it holds title to any debt secured by the deed of trust, a category that would include the debt owed under the judgment. In short, as the

party with record title to the deed of trust, FirstKey is conclusively presumed to hold title to whatever debt is secured by it, irrespective of its form. FirstKey may rely on this conclusive statutory presumption without the need to produce any additional proof of its ownership of the secured debt.

In this case, the personal representative produced evidence that another party, U.S. Bank, continues to own the judgment entered on the promissory note and has never assigned that judgment to any other party. This evidence would tend to rebut FirstKey's claim that it owns the underlying debt. Notwithstanding this evidence, however, RP § 7-103(a) expressly states that it creates a "conclusive[]" presumption of title.

Seeking to avoid the effect of RP § 7-103(a), the personal representative has cited RP § 1-202, which states: "*Unless otherwise provided*, whenever [the Real Property Article] states that a fact is presumed, the presumption is rebuttable." (Emphasis added.) The General Assembly "provided" "otherwise" (*id.*) when it created this statutory presumption. RP § 7-103(a) specifies that the presumption that it creates is a "conclusive[]" presumption, which is the opposite of a rebuttable presumption. *See* 5 Lynn McLain, *Maryland Evidence: State and Federal* § 301:1, at 406 (3d ed. 2013) (explaining that "[i]rrebuttable presumptions (also referred to as conclusive presumptions) are simply substantive rules of law, either recognized at common law or created by statute") (footnotes omitted). "A 'conclusive presumption' is one 'that cannot be overcome by any additional evidence or argument.'" *Jackson v. Dackman Co.*, 181 Md. App. 546, 576-77 (2008) (quoting Black's Law Dictionary 1223 (8th ed. 2004)), *rev'd on other grounds*, 422 Md. 357 (2011).

In summary, even if the personal representative had preserved this argument for appellate review, we would reject it. As the party holding record title to the deed of trust under RP § 7-103(a), FirstKey is conclusively presumed to hold title to "any promissory note, other instrument, or debt secured by" the deed of trust—a category that is broad enough to include the judgment debt against Mr. Brown. Because this statutory presumption is conclusive, it cannot be rebutted by the evidence presented by the personal representative.[17]

## IV. Applicability of a Statute of Limitations

In another challenge to the judgment, the personal representative contends that a "governing statute of limitations" bars this foreclosure action.

As recounted previously, the substitute trustees initiated this foreclosure action by filing an order to docket on February 7, 2023. The substitute trustees provided an affidavit affirming that the default under the deed of trust had occurred more than 14 years earlier, on September 21, 2008.

On appeal, the personal representative contends that, because the default occurred

---

[17] In a variation on his argument that the foreclosure action is an unauthorized effort to "enforce" the prior judgment, the personal representative also characterizes the foreclosure action as an impermissible "collateral attack" on the prior judgment. Because the personal representative did not previously raise the issue of whether the foreclosure action is an impermissible collateral attack, this issue is unpreserved. *See* Md. Rule 8-131(a). In any event, the argument lacks merit. "A collateral attack on a judgment is 'an attempt to impeach the judgment by matters [outside] the record[,]'" or "'to avoid, defeat, or evade it or deny its force and effect, in some incidental proceeding not provided by law for the purpose of attacking it.'" *Barry Props., Inc. v. Blanton & McCleary*, 71 Md. App. 280, 292 (1987) (quoting *Klein v. Whitehead*, 40 Md. App. 1, 20 (1978)). FirstKey has not attacked the prior judgment simply by claiming that it has the right to collect under the deed of trust securing the same debt owed under that judgment.

more than three years before the substitute trustees initiated this foreclosure action, the action is time-barred. According to the personal representative: "In Maryland the statute of limitations to collect upon a note or mortgage secured by a deed of trust is three years." The personal representative argues that an uncodified provision, section 4 of Chapter 592 of the 2014 Laws of Maryland, created a statute of limitations that applies to this foreclosure action.

The simple answer to this contention is: "There is no Statute of Limitations in Maryland applicable to foreclosure of mortgages." *Cunningham v. Davidoff*, 188 Md. 437, 442 (1947). "[T]here has never been a statute of limitations applicable to mortgage foreclosures in Maryland[,]" and "Chapter 592 [of the Laws of 2014] did not create one." *Daughtry v. Nadel*, 248 Md. App. 594, 602 (2020).

More than 75 years ago, this State's highest court explained "that '[t]here is no Statute of Limitations in Maryland applicable to foreclosure of mortgages' because mortgage foreclosure is an equitable remedy." *Daughtry v. Nadel*, 248 Md. App. at 603 (quoting *Cunningham v. Davidoff*, 188 Md. at 442). In 1973, as part of the comprehensive code revision process, the General Assembly replaced earlier statutes of limitation with a blanket, three-year statute of limitations applicable to any "civil action at law," unless another Code provision establishes a different limitations period. Md. Code (1974), § 5-101 of the Courts and Judicial Proceedings Article. "From its inception § 5-101 has been expressly limited in application to a 'civil action at law.'" *Daughtry v. Nadel*, 248 Md. App. at 605. "Foreclosure proceedings are not actions at law because they are 'equitable in nature.'" *Id.* (quoting *Wells Fargo Home Mortg., Inc. v. Neal*, 398

60

Md. 705, 728 (2007)).  Thus, the statute of limitations for civil actions at law set forth in section 5-101 does not extend to foreclosure actions.

Along with the three-year limitations period for civil actions at law, the General Assembly established a 12-year limitations period for actions on certain "specialties[,]" including an action on a "[p]romissory note or other instrument under seal[.]"  Md. Code (1974), § 5-102 of the Courts and Judicial Proceedings Article.  By Chapter 592 of the Laws of 2014, the General Assembly created an exemption from this 12-year statute of limitations for certain actions at law to enforce an obligation evidenced by certain instruments made under seal.  This provision states that section 5-102 "does not apply to . . . [a] deed of trust, mortgage, or promissory note that has been signed under seal and secures or is secured by owner-occupied residential property[.]"  Md. Code (1974, 2020 Repl. Vol.), § 5-102(c)(2) of the Courts and Judicial Proceedings Article.

As explained in *Daughtry v. Nadel*, 248 Md. App. at 611-24, Chapter 592 did not create any new statute of limitations for foreclosure actions.  Prior to that enactment, "mortgage foreclosure actions were not subject to any statute of limitations, including the 12-year statute of limitations on specialties in § 5-102."  *Id.* at 616.  Because "the 12-year statute of limitations never applied to mortgage foreclosure actions in the first place[,]" the exemption enacted by Chapter 592 did not create any statute of limitations for foreclosure actions.  *Id.* at 611.

This exemption, however, does affect actions at law seeking to recover a deficiency that remains after a foreclosure sale.  Before the 2014 enactment, "a claim to recover a deficiency judgment could nearly always be pursued" through a separate action

at law initiated within 12 years following a foreclosure sale, "because mortgages and deeds of trust are [usually] made under seal." *Daughtry v. Nadel*, 248 Md. App. at 618. "As a result of Chapter 592, however, an action at law to enforce an obligation evidenced by a promissory note, deed of trust, or mortgage on owner-occupied residential property is now subject to the three-year statute of limitations in § 5-101." *Id.* The purpose of this enactment "was not to impose a statute of limitations on mortgage foreclosure actions" but "to reduce the limitations period applicable to actions at law seeking money judgments to enforce a promissory note, deed of trust, or mortgage, including, most importantly," actions seeking "deficiency judgments" after a foreclosure sale. *Id.* at 624.

In this appeal, the personal representative argues that section 4 of Chapter 592 created a three-year statute of limitations that bars this foreclosure action. That section, which is uncodified, provides:

> That any cause of action to collect the unpaid balance due on a deed of trust, mortgage, or promissory note that has been signed under seal and secures or is secured by residential property that was owner-occupied residential property at the time the property was transferred with the unpaid balance that arises before July 1, 2014, and would not be barred under § 5-102 of the Courts and Judicial Proceedings Article before July 1, 2014, must be filed within 12 years after the date the action accrues or before July 1, 2017, whichever occurs first.

2014 Md. Laws ch. 592, § 4.[18]

---

[18] Chapter 592 of the Laws of 2014 includes five uncodified sections, which establish the effective date of the Act and "'provid[e] for the application of the Act to causes of action that arose before the effective date.'" *Daughtry v. Nadel*, 248 Md. App. at 624 n.22 (quoting Bill File for S.B. 708, at 4). This Court has previously noted that "it is particularly unwise to enact a substantive provision in a law's uncodified language." *Montgomery County v. Complete Lawn Care, Inc.*, 240 Md. App. 664, 686 n.23 (2019).

In *Daughtry v. Nadel*, 248 Md. App. at 618-19, this Court rejected the contention that Section 4 of Chapter 592 established any limitations period for foreclosure actions. This Court explained that Section 4 "applies only to 'any cause of action to collect the unpaid balance due . . . at the time the property was transferred with the unpaid balance.'" *Id.* at 619. Section 4 "refers to post-transfer causes of action—i.e., post-foreclosure actions—not foreclosure actions themselves." *Id.* In sum, nothing in Chapter 592 created any statute of limitations for foreclosure actions. It remains true today that "no statute of limitations applies to mortgage foreclosure actions" in Maryland. *Id.* at 631.

In his brief, the personal representative also cites section 5-1202(a) of the Courts and Judicial Proceedings Article, which states: "A creditor or a collector may not initiate a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action." This provision "does not purport to create a statute of limitations applicable to mortgage foreclosure actions or any other actions." *Daughtry v. Nadel*, 248 Md. App. at 624 n.24. This provision simply "makes it a violation of state law to initiate any consumer debt collection action after an otherwise-applicable statute of limitations has expired." *Id.* Because there is no statute of limitations applicable to this foreclosure action, there is no violation of section 5-1202(a).

Although the personal representative acknowledges the holding of *Daughtry v. Nadel*, he tells us that the underlying debt instrument in that case was "a traditional 'promissory note'" rather than a home equity line of credit agreement. This factual distinction has no significance to whether a statute of limitations applies to foreclosure actions. The holding of *Daughtry v. Nadel* turns on the nature of the cause of action, not

63

on the type of underlying debt instrument. An action to foreclose a lien under a deed of trust is not subject to the three-year statute of limitations, because the action "sounds in equity, not at law." *Daughtry v. Nadel*, 248 Md. App. at 617. A foreclosure action remains an equitable proceeding regardless of whether the underlying debt instrument is "a traditional 'promissory note'" or some other type of debt instrument.

To reiterate, this foreclosure action is not barred by a statute of limitations, because there is no statute of limitations in Maryland applicable to a foreclosure action.

## V.        Effect of Blank Indorsement of the Promissory Note

Within his argument regarding limitations, the personal representative raises a separate issue concerning the indorsements of the debt instrument.

In this foreclosure action, the substitute trustees presented a copy of the home equity line of credit agreement and promissory note as a true and accurate copy of the debt instrument at issue in the action. That document included a chain of special indorsements, beginning with an indorsement from the original lender, GN Mortgage, and ending with an indorsement to U.S. Bank. In a further allonge, U.S. Bank made a blank indorsement, which did not identify a party to whom the instrument was made payable. The personal representative theorizes that FirstKey's right to foreclose is based on its status as the party with possession of the home equity line of credit agreement and promissory note.

The personal representative contends that the home equity line of credit agreement and promissory note is not a "negotiable instrument" within the meaning of Title 3 of the Commercial Law Article, the portion of the Maryland Uniform Commercial Code for

64

negotiable instruments. The personal representative observes that a "'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order[.]" Md. Code (1975, 2013 Repl. Vol., 2022 Supp.), § 3-104(a) of the Commercial Law Article ("CL"). The personal representative argues that the home equity line of credit agreement was not a promise "to pay a fixed amount of money" (*id.*) because it established a revolving credit plan, which is a form of open-end credit. Under this plan, Mr. Brown was permitted "to make purchases or obtain loans from time to time" (CL § 12-901(m)(1)) as long as he did not exceed the maximum principal balance for the line of credit.[19]

Beginning with these premises, the personal representative makes the following series of arguments:

> [W]hile a negotiable instrument may be enforced by a holder in possession of the true negotiable note, COM. LAW § 3-205, the effect of a blank endorsement of a non-negotiable instrument . . . is not authorized by Maryland's UCC for secured transactions, COM. LAW § 9-101, *et seq.* Further, Appellees "cannot establish its [sic] standing merely by showing that it possessed the original [home equity line of credit agreement and promissory note], indorsed in blank, on the date this action was commenced." *One West Bank, N.A. v. FMCDH Realty, Inc.*, 165 A.D.3d 128, 135 ([N.Y. App. Div.] 2018). And since "[t]he [home equity line of credit agreement and promissory note] failed to require the payment of a fixed amount of money, making it a nonnegotiable instrument . . . it was not self-authenticating. Thus, absent other proof of authentication, it was inadmissible into evidence." *Third Fed. Sav. & Loan Ass'n of Cleveland v. Koulouvaris*, 247 So. 3d 652, 655 (Fla. Dist. Ct. App. 2018).

---

[19] The substitute trustees and FirstKey have not argued that the home equity line of credit agreement and promissory note is a "negotiable instrument" within the meaning of § 3-104(a) of the Commercial Law Article. Rather, they argue that, "even if [the note] is 'non-negotiable' under the UCC[,]" it is still "assignable by its express terms[.]" For the purpose of this appeal, we express no opinion on whether the home equity line of credit agreement and promissory note is or is not a negotiable instrument.

The statutory authorities cited by the personal representative do not establish that a blank indorsement of a non-negotiable instrument is a nullity. Section 3-205 of the Commercial Law Article authorizes certain types of indorsements of a negotiable instrument, including special indorsements and blank indorsements. It does not purport to prohibit blank indorsements of other types of instruments. The personal representative's citation to "COM. LAW § 9-101, *et seq.*" apparently refers to the entirety of Title 9 of the Commercial Law Article, the part of the Uniform Commercial Code that concerns secured transactions. This citation alone is inadequate to support a proposition that Maryland law prohibits blank indorsements of non-negotiable instruments. This Court has no obligation to "seek out law to sustain [an appellant's] position" if the appellant "provides only conclusory statements without sufficient factual or legal support." *Selective Way Ins. Co. v. Fireman's Fund Ins. Co.*, 257 Md. App. 1, 56 (2023) (citations and quotation marks omitted); *see also HNS Dev., LLC v. People's Counsel for Baltimore County*, 425 Md. 436, 458-59 (2012) (holding that an appellate court may decline to address a party's argument if the party fails to present sufficient legal authorities to support it).

The two out-of-state cases quoted by the personal representative fail to establish that a blank indorsement of a non-negotiable instrument is invalid. In the first cited case, a bank sought to foreclose on a mortgage securing repayment of a home equity line of credit. *OneWest Bank, N.A. v. FMCDH Realty, Inc.*, 165 A.D.3d 128, 130, 83 N.Y.S.3d 612, 613 (App. Div. 2018). The New York appellate court held that a bank could not

66

establish its standing to foreclose "*merely* by demonstrating that it was in possession of the original [agreement], indorsed in blank, at the time the [foreclosure] action was commenced." *Id.*, 165 A.D.3d at 132, 83 N.Y.S.3d at 615 (emphasis added). As a result, the bank was not entitled to summary judgment in its favor in the foreclosure action. *Id.*, 165 A.D.3d at 135, 83 N.Y.S.3d at 617. At most, this authority supports the proposition that, where a party seeks to foreclose based on its possession of a non-negotiable instrument that has been indorsed in blank, the party must provide additional proof of its standing to foreclose.

In the present case, the substitute trustees and FirstKey did not rely solely on a blank indorsement to establish their right to foreclose. In opposition to the motion to dismiss, they produced a copy of the Assignment of Deed of Trust, which had been recorded in the land records for Baltimore County. In that instrument, "Mortgage Electronic Registration Systems, Inc. as beneficiary, as nominee for GN Mortgage, LLC, its successors and assigns" assigned all of its interest in the deed of trust to FirstKey. Opposing the motion, the substitute trustees and FirstKey cited section 7-103(a) of the Real Property Article of the Maryland Code, which provides: "The title to any promissory note, other instrument, or debt secured by a mortgage, both before and after the maturity of the note, other instrument, or debt, conclusively is presumed to be vested in the person holding the record title to the mortgage." They argued that, by operation of this statute, FirstKey was "conclusively presumed to be the owner" of the debt instrument as the "record assignee of the deed of trust." The personal representative has failed to demonstrate that this recorded assignment of the deed of trust, along with the conclusive

67

statutory presumption of ownership under section 7-103(a) of the Real Property Article, did not afford adequate proof of FirstKey's right to foreclose.

In a footnote, the personal representative asserts that "the purported 'assignor'" of the deed of trust was "Mortgage Electronic Registration Systems, Inc. as beneficiary, as nominee for GN Mortgage, LLC, its successors and assigns." The personal representative asserts that the assignment "only carries with it whatever rights MERS had related to a deed of trust (which were none)." In fact, however, the deed of trust named "Mortgage Electronic Systems, Inc.," as the beneficiary under the deed of trust. The deed of trust stated: "The beneficiary of this Security Instrument is MERS (solely as nominee for [GN Mortgage, LLC] and [GN Mortgage, LLC]'s successors and assigns) and the successors and assigns of MERS." It further stated that Mr. Brown "agree[d] that MERS holds only legal title to the interests granted" in the deed of trust and that "if necessary . . ., MERS (as nominee for Lender and Lender's successors and assigns) has the right[] to exercise all of those interests, including, but not limited to, the right to foreclose and sell the Property[.]" Thus, it is incorrect to say that MERS had no rights or interest in the deed of trust. The personal representative has failed to demonstrate that the assignment made by MERS is inadequate to establish FirstKey's ownership of the deed of trust.

The second out-of-state opinion cited by the personal representative has nothing to do with the effect of a blank indorsement. The opinion in *Third Federal Savings and Loan Ass'n of Cleveland v. Koulouvaris*, 247 So. 3d 652 (Fla. Dist. Ct. App. 2018), concerns the admissibility of evidence. The Florida appellate court held that a trial court properly sustained an objection to the admission of a copy of a home equity line of credit

68

agreement, where the party had offered no testimony to authenticate the copy of the document. *Id.* at 655. The court reasoned that the document was not a negotiable instrument, and thus not self-authenticating under a rule of evidence that makes an exception to the general authentication requirement for "commercial paper" made under the Uniform Commercial Code. *Id.* at 654-55.

The Florida court's holding has no bearing on the issues raised in the present appeal from a denial of a motion to stay or dismiss the foreclosure action. Here, there was no trial or evidentiary hearing, nor was there an objection to or ruling on the admissibility of evidence. The substitute trustees were not relying on some exception to the authentication requirement for the admission of certain instruments into evidence. In accordance with Md. Rule 14-207(b)(3), the substitute trustees had filed an order to docket accompanied by "a copy of [the] separate note or other debt instrument supported by an affidavit that it is a true and accurate copy and certifying ownership of the debt instrument[.]" The substitute trustees provided proof of authentication in the manner required by the applicable Maryland Rules for the purpose of pursuing a foreclosure action. Additional proof of the authenticity of the copy of the instrument was not required.

The personal representative has failed to show that the blank indorsement of the home equity line of credit agreement and promissory note establishes a defense as to the validity of the lien or the lien instruments or the right of FirstKey to foreclose.

**VI.   Alleged Violation of Procedural Due Process**

In his brief, the personal representative contends that the circuit court denied him

69

due process of law. The personal representative writes: "[T]he foreclosure process, as carried out by the Circuit Court in this action[] den[ies] parties like [the personal representative] due process and a fair and reasonable opportunity to challenge a claimed right to foreclose[.]" According to the personal representative, the record of this case "shows the fundamental unfairness of Maryland's summary foreclosure process utilized" in this foreclosure action.

Although the personal representative makes broad claims about the unfairness of "procedures" employed in this action, his argument discusses just three specific aspects of the proceedings. First, he complains that the substitute trustees "scheduled the foreclosure sale to occur" before the court had decided his motion to stay or dismiss the foreclosure action. Second, he complains that the court denied his motion without a hearing. Third, he complains that the court did not provide an explanation for its ruling.

In Maryland, the foreclosure process is governed by Chapter 200 of Title 14 of the Maryland Rules, which implements Title 7 of the Real Property Article of the Maryland Code. Based on the personal representative's argument, it is difficult to ascertain which of these rules or statutory provisions he believes to be inadequate. Missing from this argument is a substantive discussion of the relevant provisions themselves, such as identifying the procedural protections that are available to parties seeking to challenge a foreclosure sale and explaining why those protections are alleged to be constitutionally inadequate to protect the property interests of those parties.

"Procedural due process is a flexible concept that 'calls for such procedural protection as a particular situation may demand.'" *Knapp v. Smethurst*, 139 Md. App.

70

676, 704 (2001) (quoting *Wagner v. Wagner*, 109 Md. App. 1, 24 (1996)). "'At [t]he

core of due process is the right to notice and a meaningful opportunity to be heard.'"

*Knapp v. Smethurst*, 139 Md. App. at 704 (quoting *Roberts v. Total Health Care, Inc.*,

349 Md. 499, 509 (1998)) (further citation and quotation marks omitted). Due process

"does not require procedures so comprehensive as to preclude any possibility of error."

*Wagner v. Wagner*, 109 Md. App. at 24. "Stated another way, due process merely

assures *reasonable* procedural protections, appropriate to the fair determination of the

particular issues presented in a given case." *Id.* (emphasis in original). A bare recitation

of a few selected procedural facts of the present case fails to convince us that the

foreclosure process established in Maryland does not afford property owners adequate

notice and a meaningful opportunity to be heard.

The personal representative's foremost complaint seems to be that, at one point,

the substitute trustees (not the circuit court), *scheduled* a foreclosure sale to occur on July

27, 2023, before the court had ruled on the personal representative's motion to dismiss

the foreclosure action or to stay the sale of the property. The personal representative does

not argue that his adversaries violated any statute or rule by scheduling a foreclosure sale

to occur at that time. *See generally* Md. Code (1974, 2015 Repl. Vol.), § 7-105.1(n) of

the Real Property Article (setting forth time restrictions for the foreclosure sale of

residential property).

As the personal representative acknowledges, the contemplated foreclosure sale,

scheduled for July 27, 2023, did not actually occur. Seven days before the scheduled

sale, the circuit court denied the personal representative's motion to stay or dismiss the

foreclosure action. On the same day, the personal representative noted an appeal to this Court. The personal representative then filed two emergency motions: one in the circuit court, asking that court to stay its own proceedings; and another in this Court, asking this Court to stay the foreclosure proceedings in the circuit court. On July 26, 2023, this Court entered an order staying the foreclosure proceedings pending further order of this Court. The circuit court proceeded to deny the other emergency motion, on the ground that the request for a stay became moot when this Court imposed a stay.

Under these circumstances, it cannot be said that, when the substitute trustees *scheduled* a foreclosure sale to occur on July 27, 2023, this act resulted in a deprivation of property without due process of law. The personal representative received notice of the foreclosure sale and exercised his right to be heard before it took place. The court denied the motion one week before the scheduled foreclosure sale. In any event, that scheduled foreclosure sale was ultimately canceled when the personal representative succeeded in obtaining an indefinite stay of the foreclosure proceedings while he pursues his legal challenges to the foreclosure action. At this point, any analysis of the scheduling of this canceled sale would be an academic exercise. This Court's role is to review judgments, not to decide moot or academic questions. *See, e.g.*, *Sizemore v. Town of Chesapeake Beach*, 225 Md. App. 631, 666 (2015). Moreover, this Court adheres to the "'strong and established policy'" that it will "'decide constitutional issues only when necessary'" to do so. *Comptroller of Treas. v. Zorzit*, 221 Md. App. 274, 308 (2015) (quoting *VNA Hospice of Maryland v. Dep't of Mental Health & Hygiene*, 406 Md. 584, 604 (2008)). We decline to depart from these policies here.

72

The personal representative also complains that the circuit court denied his motion to stay or dismiss the foreclosure action "without a hearing." In making this complaint, the personal representative does not discuss the relevant standards that govern when a defendant is entitled to a hearing in a foreclosure action.

In a foreclosure action, "[a] motion to stay and dismiss" must "state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action[.]" Md. Rule 14-211(a)(3)(B). In addition, the motion must "be accompanied by any supporting documents or other material in the possession or control of the moving party and any request for the discovery of any specific supporting documents in the possession or control of the plaintiff or the secured party[.]" Md. Rule 14-211(a)(3)(C). The court "shall deny the motion, *with or without a hearing*, if the court concludes from the record before it that the motion . . . does not on its face state a valid defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action." Md. Rule 14-211(b)(1)(C) (emphasis added).

In this case, the personal representative's motion under Md. Rule 14-211 included a request for a hearing. In its order denying the motion, the circuit court stated that it had given "consideration" to "the Defendant's Motion to Dismiss and/or Stay the Plaintiffs' Foreclosure Action . . . , the response thereto filed by the Plaintiffs and Third-Party Defendant, and the argument thereon[.]" The court concluded "that the Motion does not state on its face a valid defense as to the validity of the foreclosing lien or the right of the Plaintiffs to foreclose on the subject property[.]"

73

Because the circuit court concluded that the motion failed to state a valid defense to the validity of the lien or the right to foreclose, the decision to decline to hold a hearing was consistent with the standard set forth in Md. Rule 14-211. This Rule affords the party opposing a contemplated foreclosure sale with an opportunity to be heard, while requiring a full evidentiary hearing on the merits only if the motion raises a valid defense "accompanied by some level of factual and legal support." *Buckingham v. Fisher*, 223 Md. App. 82, 92 (2015). We are not persuaded that the hearing standard set forth in Md. Rule 14-211 violates the minimum requirements of due process.

The personal representative also complains that the circuit court did not provide a statement of reasons when it denied his motion. The personal representative cites no rule or statute requiring the court to provide a statement of reasons when it denies a motion to stay or dismiss a foreclosure action. By choosing not to create such a requirement, the General Assembly and the Supreme Court of Maryland implicitly have expressed their views that such a requirement is not necessary to ensure that litigants have a meaningful opportunity to oppose a contemplated foreclosure sale. The personal representative has not cited any authority supporting the proposition that due process demands that a trial court issue a statement of reasons when it denies this type of motion. We are not persuaded that the circuit court violated procedural due process by declining to issue a statement of reasons when it denied the motion.[20]

---

[20] In a footnote within his due process argument, the personal representative asserts that the circuit court failed "to preserve [his] jury demand" on his counterclaims seeking damages for alleged violations of the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act. The personal representative asserts that the

In this foreclosure action, the personal representative received notice of the impending foreclosure sale and availed himself of the opportunities to oppose it.  The personal representative has not shown that the circuit court violated any applicable procedural requirement when it denied the motion to stay or dismiss the foreclosure action.  We are not persuaded that the procedures set forth in the Maryland Rules deprive borrowers of adequate notice or opportunity to be heard.  Consequently, we see no support for the contention that the circuit court violated the personal representative's procedural due process rights when it denied his motion.

## VII.   <u>Doubts as to Validity of the Lien or the Lien Instrument</u>

In another challenge to the judgment, the personal representative contends that this foreclosure action is improper because, he says, he has generated "serious questions" about the rights of FirstKey.

The personal representative quotes the proposition that "when there is doubt as to the validity of the lien and the lien instruments, it is inappropriate for a mortgage holder to utilize the summary *in rem* foreclosure process instead of filing an *in personam* suit against the debtor to litigate the enforceability of the lien[.]"  *Newsom v. Brock & Scott, PLLC*, 253 Md. App. 181, 217 (2021).  The personal representative also quotes the

---

court was "required" to "preserve" his right to a jury trial on his counterclaims, under *Fairfax Savings, F.S.B. v. Kris Jen Limited Partnership*, 338 Md. 1 (1995), and *Higgins v. Barnes*, 310 Md. 532, 551-52 (1987).  According to the personal representative, the decision to allow a foreclosure sale to proceed after he demanded a jury trial on his counterclaims shows "the lack of facial due process in this action and the Maryland Rules authorizing it[.]"  The precedents cited by the personal representative concern the right to a jury trial, not the minimum requirements of due process.  We fail to see how an alleged error in construing the scope of the right to a jury trial amounts to a denial of due process.

proposition that, if a foreclosing party "cannot establish, for whatever reason, the validity of its lien, it must pursue another avenue to assert its rights under the mortgage." *Yacko v. Mitchell*, 249 Md. App. 640, 651 (2021).

The two cases quoted here both involved plausible allegations of forgery in the lien instruments used in a foreclosure action. In *Yacko v. Mitchell*, 249 Md. App. at 653, a homeowner moved to dismiss a foreclosure action based on evidence that the lender had covered up the "VOID" stamps on a cancelled note and deed of trust and replaced them with new stamps reading "REDACTED." In *Newsom v. Brock & Scott, PLLC*, 253 Md. App. at 194-95, a homeowner brought suit against the attorneys who had initiated a foreclosure action against her. The basis for the homeowner's suit was that the attorneys were on notice that someone other than the homeowner had signed her name on a deed of trust that purported to create a lien on property that she owned with her husband as tenants by the entireties. *Id.* at 212-13, 216.

Although the personal representative frames this argument as a standalone issue, any evaluation of this issue necessarily depends on the outcome of his other challenges to the judgment. The personal representative writes that, "[a]s shown" in six other discrete sections of his appellate brief, "there are serious questions about the rights of the subject loan," which, he says, make a foreclosure action an inappropriate remedy.

On their own terms, the various challenges made in the personal representative's brief do not generate "doubt as to the validity of the lien [or] the lien instruments[.]" *Newsom v. Brock & Scott, PLLC*, 253 Md. App. at 217. Unlike the *Newsom* and *Yacko* cases, the present case does not involve any allegations of forgery in the lien instruments

used in the foreclosure action. Of the various challenges raised by the personal representative, one arguably concerns in some sense the "validity" of the lien or lien instrument—his argument that the deed of trust had merged into a prior judgment. As explained in Part II of this Discussion, however, that merger argument is incorrect. In all of the other challenges, the validity of the debt and the deed of trust securing the debt is not disputed. Rather, the personal representative has challenged, in various ways, whether FirstKey has the right to foreclose under the (otherwise valid) deed of trust. Thus, even if those challenges had merit, they would not establish any need "to litigate the enforceability of the lien" (*Newsom v. Brock & Scott, PLLC*, 253 Md. App. at 217) through a separate action.

In sum, the personal representative failed to establish "'doubt as to the validity of the lien [or] lien instruments'" as a potential defense to the foreclosure action. *Newsom v. Brock & Scott, PLLC*, 253 Md. App. at 218 (emphasis omitted) (quoting *Yacko v. Mitchell*, 249 Md. App. at 649-50).

<u>CONCLUSION</u>

For the reasons set forth in this opinion, we have concluded that most of the defenses raised by the personal representative in his motion to stay or dismiss the foreclosure action under Md. Rule 14-211 are not viable. The lone exception is the defense that FirstKey currently lacks the right to foreclose because it has not obtained a license required by the Credit Grantor Revolving Credit Provisions subtitle. Unlike many of the other defenses raised, lack of licensure is not a permanent impediment to a foreclosure pursuant to the deed of trust, by a properly licensed party or a party that is

exempt from the licensing requirement.

Accordingly, we will vacate the order denying the motion to stay or dismiss the foreclosure action and remand this case for further proceedings. When this case returns to the circuit court, the court must exercise its discretion in deciding how to proceed in a manner consistent with the rights of all parties to the case.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID 20% BY APPELLEES AND 80% BY APPELLANT.**